KING, J.,
for the Court:
¶ 1. On February 2, 1993, Onnie Ware suffered an injury at her place of employment, Hillcraft Furniture Company in New Albany, Mississippi. Hillcraft admitted com-pensability of the injury for the period February 10, 1993 through May 16, 1993 and paid temporary total disability benefits for those months. On July 14, 1994, Ms. Ware filed a petition to controvert with the Workers’ Compensation Commission.
¶ 2. On September 6, 1995, a hearing was held before an administrative law judge. The administrative law judge determined that Ms. Ware’s period of temporary total disability extended through September 8, 1993, but that permanent disability benefits were not supported by the evidence. Ms. Ware appealed this determination to the Workers’ Compensation Full Commission and the circuit court. Both tribunals affirmed the Administrative law judge’s decision. Ms. Ware has now appealed to this Court and assigned four points of error:
I. THE CIRCUIT COURT ERRED IN AFFIRMING THE ADMINISTRATIVE LAW JUDGE’S/COMMISSION’S FINDING THAT THE PETITIONER WAS TEMPORARILY DISABLED FROM FEBRUARY 2, 1993 UNTIL SEPTEMBER 1993, BASED ON THE SUBSTANTIAL EVIDENCE TO THE CONTRARY.
II. THE CIRCUIT COURT/COMMISSION ERRED IN AFFIRMING THE ADMINISTRATIVE JUDGE’S FINDING THAT BASED UPON A VIDEO TAPE SHOWN OF THE PETITIONER AT A LAUNDROMAT ON SEPTEMBER 10, 1994, SPENDING TIME OF AN HOUR AND A HALF ON A SATURDAY MORNING, SHOWED NO INDICATION OF ANY PHYSICAL LIMITATION DURING THIS ACTIVITY, BASED ON THE SUBSTANTIAL EVIDENCE TO THE CONTRARY.
III. THE CIRCUIT COURT ERRED IN AFFIRMING THE ADMINISTRATIVE JUDGE’S/COMMISSION’S FINDING THAT THE PETITIONER HAS NO PERMANENT DISABILITY TO HER ARM, BACK, NECK AND FROM A PSYCHOLOGICAL STANDPOINT BASED ON THE SUBSTANTIAL EVIDENCE TO THE CONTRARY AND/OR RULING WAS PREDICATED ON AN ERRONEOUS APPLICATION OF THE LAW.
IV. THE CIRCUIT COURT ERRED IN AFFIRMING THE ADMINISTRATIVE LAW JUDGE’S/COMMISSION’S FINDING THAT THE PETITIONER WAS GUILTY OF “BLATANT DOCTOR SHOPPING” BASED ON THE SUBSTANTIAL EVIDENCE TO THE CONTRARY.
Finding no error, this Court affirms the judgment.
FACTS
¶ 3. Ms. Ware was employed as a seamstress by Hillcraft Furniture Company. She performed duties which included sitting at a sewing machine to stitch furniture cushions and lifting stacks of upholstery.
*514 ¶ 4. On February 2, 1993, Ms. Ware sat in her chair at Hillcraft. The chair collapsed and she fell to the floor injuring her back and left shoulder. She told the supervisor about the incident and remained at work until her shift ended.
¶5. The record of this case includes the depositions and medical records of numerous physicians and medical facilities.
¶ 6. The record reveals that Ms. Ware was examined by Hilleraft’s company physician, Dr. Stephen Shirley, on several occasions. Dr. Shirley took x-rays of her shoulder and spine, and found the x-rays to be normal. Because Ms. Ware continued to complain of pain, he prescribed pain-relieving medications and referred her to Dr. Claudio Feler, a neurosurgeon, and Dr. James T. Ga-lyon, an orthopedic surgeon.
¶ 7. Dr. Feler conducted a magnetic resonance imaging (MRI) test and a computerized axial tomography (CAT) scan. He found these tests to be unremarkable and referred her back to Dr. Shirley.
¶8. In March of 1993, Dr. Galyon examined Ms. Ware and diagnosed lumbosacral and cervical strain. He recommended cortisone oral therapy and postural exercises. It was Dr. Galyon’s opinion that Ms. Ware failed to aggressively pursue these exercises. She continued to complain of headaches, pain in her lower back, right leg, neck, and swelling of the left arm and feet. According to Dr. Galyon, the symptoms of swelling were inconsistent with symptoms usually associated with her injury.
¶ 9. He advised Ms. Ware to return to work on May 17, 1993. On that day, she worked for a few hours, but indicated having problems standing and sitting. Dr. Galyon then suggested that she remain home several more weeks.
¶ 10. Ms. Ware continued to visit Dr. Ga-lyon, but still complained of pain. After finally recommending that a therapeutic epidural block[1] be performed by Dr. Steve Gibson, an anesthesiologist, Dr. Galyon formally released her to return to work on September 8, .1993. It was his opinion that she would not be able to perform her same job duties, but could perform some type of work. He indicated that she had five percent partial permanent disability.
¶ 11. Upon Dr. Galyon’s recommendation, Ware was evaluated at North Mississippi Physical Therapy Services in June of 1993. She attended four physical therapy sessions and was advised on proper methods of back rehabilitation, but failed to attend any remaining sessions.
¶ 12. In June of 1993, Ware was examined by Dr. James Speck, an emergency room physician. She complained of joint pain and swelling feet. Dr. Speck found no objective medical evidence to support these complaints. He referred her to Dr. Howard Holaday, a neurosurgeon.
¶ 13. Dr. Holaday diagnosed chronic low back pain, but found no evidence of fracture, subluxation, bony destructive lesion or herniated intervertebral disc. He advised that Ms. Ware return to work.
¶ 14. In July of 1993, Dr. Joseph Hudson, a neurosurgeon to whom Ms. Ware had been referred by Dr. Galyon, examined the previous MRI and CAT scan, and performed an electromyography (EMG). He indicated that the results from these tests were normal. Dr. Hudson advised that Ms. Ware start an exercise program, but noted that Ms. Ware had a negative attitude regarding his advice. It was Dr. Hudson’s opinion that Ms. Ware did not appear to exert much effort to overcome her injury. He assigned no permanent restrictions and suggested that she return to work.
¶ 15. In October of 1993, Dr. James Med-lin, a general practitioner in Ecru, Mississippi, examined Ms. Ware and diagnosed lumbar spine sprain/strain. She complained of neck and lower back pain. Dr. Medlin prescribed several medications and physical therapy. After taking an x-ray of her spine, he found the L4-5 disc space to have narrowed.
*515 ¶ 16. Dr. Medlin also performed a functional capacity evaluation. Based on this evaluation, he determined that she should be limited to light or sedentary work. He noted that he observed no significant degree of malingering during the evaluation. In his opinion, she reached maximum medical improvement in March or April of 1994. He gave her a five percent permanent, anatomical impairment rating.
¶ 17. In 1994, Ms. Ware sought social security disability benefits. The medical records of the physicians used in her social security case were admitted into evidence; those physicians were Dr. James Crowder, Dr. Stanley Russell, and Dr. Robert Barnett.
¶ 18. On February 23, 1994, Dr. Russell, a psychiatrist, evaluated Ms. Ware. He diagnosed her as having generalized anxiety disorder, depression, and myofasicititis. It was his opinion that “these medical impairments when combined with her physical impairments [of strain of the lumbar and cervical areas, somatoform pain disorder and tension headaches], rendered her incapable of coping with the physical and mental stresses associated with any type of gainful employment”.
¶ 19. In March of 1994, Dr. Barnett, an orthopedic surgeon, examined Ms. Ware on one occasion. He found the x-rays of her cervical and lumbar spine to be normal, but suggested that she not perform any type of repetitive lifting, bending, or prolonged standing.
¶ 20. Upon Hilleraft’s request, Ms. Ware went to the Industrial Work Center for a vocational evaluation in April of 1994. The Center found that Ms. Ware had sacroiliac dysfunction, decreased strength and range of motion. However, the therapists concluded that Ms. Ware did not exert maximum effort and therefore an accurate assessment of her abilities could not be determined.
¶21. Dr. Crowder, a clinical psychologist and vocational rehabilitation expert, conducted the Minnesota Multiphasic Personality Inventory on Ms. Ware and determined that she suffered from depression and hysteria, and was highly emotionally reactive.
¶ 22. To further determine her vocational disability, he conducted the Wide Range Achievement Test-Revised. This test revealed that Ms. Ware’s reading and arithmetic skills were at the fourth grade level and her spelling skills were at the third grade level. It was Dr. Crowder’s opinion that Ms. Ware was 100 percent vocationally disabled from performing her duties at Hilleraft and 45 percent disabled “in terms of reduced access to the labor market”.
¶ 23. In May of 1995, Dr. Mark Webb, a psychiatrist procured by Hilleraft, diagnosed Ms. Ware as suffering with malingering, a form of intentional deception, dysthymia, a non-disabling, simmering depression, and histrionic personality disorder, a mental state which involves the exaggeration of pain or symptoms. Ms. Ware stated to him that she experienced pain in her lower back, left arm, left hand, the left side of her face, and the side of her head. Dr. Webb felt that some of these symptoms may have been exaggerated. His final medical opinion was that Ms. Ware had engaged in “doctor shopping” and did not suffer any psychiatric or psychological difficulty due to her job injury.
¶24. A friend referred Ms. Ware to Dr. Patrick Barrett, an orthopedic surgeon. Upon the referral of Dr. Barrett, Dr. Salil Tiwari, a neurologist, first examined Ms. Ware in June of 1995. Because he initially diagnosed left SI radiculopathy, he performed EMG testing. No neural tissue injury or radiculopathy in her spine was revealed. He advised that she refrain from excessive kneeling, lifting, turning, twisting, bending, and stooping.
¶ 25. Dr. Tiwari also performed EMG testing on her hands. He determined that Ms. Ware had moderate left carpal tunnel syndrome and medial compressive neuropathy.
¶26. Ms. Ware was finally examined by three physicians to determine the presence of carpal tunnel syndrome or arthritis. Dr. Suthin Songcharoen, a rheumatologist, examined Ms. Ware for rheumatoid arthritis. Because she failed to return for her follow-up visit, he was unable to complete the study. Dr. Somprasong Songcharoen, a hand specialist, felt that carpal tunnel syndrome was existent and may have resulted from the type of work performed. Dr. Don Carpenter, a *516 neurophysiologist, found Ms. Ware to have a mild ease of carpal tunnel syndrome, if any, but did not feel this would prevent her from working.
¶ 27. After considering the evidence, the Administrative law judge determined Ms. Ware’s period of temporary total disability was from February 2,1993, the actual date of injury, through September 8, 1993 and that permanent disability benefits were not supported by the evidence. Ms. Ware appealed to the Workers’ Compensation Full Commission and the circuit court. The Commission and circuit court both affirmed. Ms. Ware has now appealed to this Court.

STANDARD OF REVIEW

¶ 28. The Workers’ Compensation Commission is the trier of fact and any question of fact decided by it is conclusive on appeal if it is supported by substantial evidence. Parker v. United Gas Corp., 240 Miss. 351, 357, 127 So.2d 438, 440 (1961).

DISCUSSION

The Commission’s Decision regarding the Extent of Disability

¶29. The Administrative law judge determined that Ms. Ware’s period of temporary total disability did not extend beyond September 8, 1993, the maximum medical improvement date as determined by Dr. Galyon. The Commission adopted these findings. Ms. Ware contends that the Commission failed to fully consider the testimony of Dr. Galyon, Dr. Crowder, Dr. Medlin, and Dr. Tiwari, and therefore substantial evidence does not support its determination.
¶ 30. The relevant question before this Court is not whether there was sufficient evidence to support Ms. Ware’s claim, but whether substantial evidence existed to support the decision of the Commission. In the resolution of that question, this Court cannot substitute its determination of fact for that of the Commission.
¶ 31. The Commission is the trier of fact. This Court exceeds its jurisdiction when it invades the province of the Commission and decides which witnesses the Commission should or should not believe. Hamilton Mfg. Co. v. Kern, 242 So.2d 441, 444 (Miss.1970). A review of the record reveals that doctors offered opinions, favorable and non-favorable, to Ms. Ware’s claim. This Court finds that substantial evidence existed from which the Commission could find that neither additional temporary total disability nor permanent disability benefits were justified.

The Commission’s Determination Regarding the Videotape and Ms. Ware’s Frequent Use of Physicians

¶ 32. On the morning of September 10, 1994, Hilleraft videotaped Ms. Ware at a laundromat. She was taped for approximately an hour and a half. The administrative law judge determined that this tape revealed Ms. Ware “to be without the kind of pain she told all the medical providers about, or for that matter, any sort of disability at all.” Ms. Ware contends that the Commission should not have considered this tape because it was an isolated incident.
¶ 33. As finder and trier of fact in a workers’ compensation claim, the Commission was charged with evaluating and weighing all the medical evidence. Sibley v. Unifirst Bank for Savings, Through Resolution Trust Corporation, 699 So.2d 1214, 1219 (Miss.1997), (citing Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss.1988)). Though the videotape may have revealed only an hour and a half of Ms. Ware’s physical condition while performing one activity, the Commission was within its authority to review the videotape and weigh its probative value with that of the remaining medical evidence.
¶ 34. Ms. Ware also argues that the Commission erred when stating that she engaged in “doctor shopping”. This Court, again, notes that the Commission was vested with the authority to evaluate and weigh the evidence. Considering the number of physicians seen by Ms. Ware coupled with the lack of objective medical evidence to support many of her complaints, there existed substantial evidence from which the Commission could draw such a conclusion.
*517 ¶ 35. Finding no error in the instant case, we affirm the circuit court judgment.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF UNION COUNTY IS AFFIRMED WITH COSTS OF THIS APPEAL ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN and THOMAS, P.JJ., and COLEMAN, DIAZ, HERRING, HINKEBEIN, PAYNE, and SOUTHWICK, JJ., CONCUR.

. Ms. Ware decided that she did not want to have this procedure performed. Hillcraft’s insurance carrier also refused to pay for the epidural block.