727 So.2d 771 (1999)
Daetrus L. PILATE, Appellant,
v.
INTERNATIONAL PLASTICS CORPORATION and American Federated Insurance Company, Appellees.
No. 97-CC-01501 COA.
Court of Appeals of Mississippi.
January 12, 1999.
*772 Ellis Turnage, Cleveland, Aelicia L. Thomas, Clarksdale, Attorneys for Appellant.
T.G. Bolen Jr., Ridgeland, Attorney for Appellees.
Before THOMAS, P.J., and DIAZ and SOUTHWICK, JJ.
THOMAS, P.J., for the Court:
¶ 1. Daetrus L. Pilate appeals the decision of the Sunflower County Circuit Court affirming the Mississippi Workers' Compensation Commission's denial of permanent partial disability and loss of wage earning capacity. On April 16, 1997, the Mississippi Workers' Compensation Commission ruled that the injury suffered by Pilate on January 21, 1995 was a compensable injury arising during the course and scope of Pilate's employment. However, the Commission ruled that Pilate had reached maximum medical improvement on May 3, 1995 and awarded Pilate temporary total indemnity and disability benefits for the period of his disability at his average weekly wage rate of $268.63. Pilate appeals to this Court and raises the following assignments of error:
I. THE FULL COMMISSION COMMITTED MANIFEST AND REVERSIBLE ERROR AS A MATTER OF LAW AND FACT
II. PILATE HAS NOT REACHED MAXIMUM MEDICAL IMPROVEMENT SINCE ALL TREATMENT AND DIAGNOSTIC TESTS RECOMMENDED WHICH COULD BENEFIT PILATE HAVE NOT BEEN UNDERTAKEN
III. PILATE SUSTAINED A 5 PERCENT PERMANENT IMPAIRMENT RATING TO HIS BODY AS A WHOLE *773 RESULT OF HIS WORK RELATED INJURY
IV. PILATE HAS SUFFERED A LOSS OF WAGE EARNING CAPACITY AS A RESULT OF HIS WORK-RELATED INJURY
Finding no error, we affirm.

FACTS
¶ 2. On January 21, 1995, Daetrus L. Pilate was injured during the scope and course of his employment with International Plastics Corporation. Pilate began his employment with I.P.C. as a material handler in October 1993. On January 21, 1995, Pilate was instructed to move a large stack of chairs. While attempting to move the chairs, Pilate felt a muscle pull in his back. Pilate continued to work the rest of his shift to completion and failed to notify his supervisor of the injury.
¶ 3. The following Monday, Pilate sought initial treatment from Dr. Walter Gough. Pilate later sought treatment from Dr. Nate Brown in Cleveland, Mississippi, on several occasions beginning on February 1, 1995. Later, Pilate was recommended by Dr. Brown to Dr. Ronald Childress in Memphis, Tennessee. Dr. Childress provided treatment to Pilate from February 23, 1995 until July 31, 1996.
¶ 4. During the February 23, 1995 examination, Dr. Childress observed muscle spasms upon forward flexion of 60 degrees to Pilate's lumbar spine. Additional forward flexion resulted in pain as indicated by Pilate. Further examinations conducted by Dr. Childress revealed that Pilate's x-rays were unremarkable and his reflexes symmetrical. Pilate's CT scan performed on March 16, 1995 indicated a normal scan with normal neck mobility. Aside from Pilate's subjective descriptions indicating the presence of pain, Dr. Childress concluded that surgery was unnecessary at the present time absent some objective medical evidence of an injury.
¶ 5. Although Pilate was still experiencing some difficulty with his injury, Dr. Childress concluded that Pilate had reached maximum medical improvement on May 3, 1995. Dr. Childress acknowledged that the MMI is a subjective determination but that enough medical evidence existed to assign a permanent, partial impairment rating of 5 percent to the body as a whole using the AMA guidelines. Dr. Childress continued to treat Pilate and released him to light duty work with a work restriction form prepared by his attorney in November 1995.
¶ 6. Upon returning to I.P.C., Pilate was assigned light duty work consistent with the restrictions provided by Dr. Childress. Those duties consisted of affixing adhesive sticker labels to product, picking up trash, and sweeping the floor. However, after working for two and one-half days in a light duty capacity, Pilate left his employer without medical excuse or explanation. Pilate stated that the constant bending and picking up trash while walking throughout the plant aggravated his back. Pilate testified that the plant is approximately a quarter of a mile long. He also testified he was given breaks by I.P.C. during his light duty assignments.
¶ 7. Pilate further testified that between November 1995 and August 1996, he inquired several times, over the phone and in person, with I.P.C. concerning additional work; however, none was available other than the light duty work previously provided. Pilate testified he was enrolled full time at Coahoma Community College beginning with the Fall 1995 semester and that he attempted to find additional employment with various employers including Kroger and Sears, but that none were taking applications. The possibility of employment with the Mississippi Department of Corrections was also attested to by Pilate, although he has yet to hear from them. Pilate further testified he participates in the work study program at college in the campus book store where he was working approximately eleven to twelve hours per month while attending school on a full time status.
¶ 8. On March 11, 1996, Pilate was examined by Dr. Lon Alexander, a neurosurgeon in Jackson, Mississippi. Dr. Alexander's independent medical examination was performed at the request of I.P.C. and American Federal Insurance Company. Dr. Alexander conducted his examination prior to a review of Pilate's medical history and explained that *774 his reasoning for doing so was to prevent any preconceived notions of diagnosis. A review of Pilate's medical history was conducted by Dr. Alexander subsequently to his medial examination of Pilate.
¶ 9. Based upon this examination, Dr. Alexander noted the absence of any objective medical findings aside from Pilate's subjective complaints of pain. Dr. Alexander also stated that in his opinion, Pilate was capable of performing his job duties and concluded that, upon his medical findings, an impairment rating in this case was not supported by objective findings.
¶ 10. Based on these and other findings, the administrative law judge ruled that Pilate had reached maximum medical improvement on May 3, 1995 as indicated by Dr. Childress and that Pilate failed in meeting the burden of proving his entitlement to additional compensation benefits beyond those previously received as Pilate had not suffered any industrial loss of wage earning capacity. Further, Pilate's claim for permanent disability benefits was denied. On April 16, 1997, the Workers' Compensation Commission affirmed the administrative law judge's ruling. Upon appeal to the Sunflower County Circuit Court, the circuit court affirmed the Commission's ruling.

ANALYSIS

I.

THE FULL COMMISSION COMMITTED MANIFEST AND REVERSIBLE ERROR AS A MATTER OF LAW AND FACT
¶ 11. Pilate has raised four issues in his brief for consideration by this Court. Having made a complete review of the record and the issues as presented, we will address only the issue of whether the Commission's decision was erroneous as a matter of law and unsupported by substantial evidence in determinations of fact. Pilate's remaining issues: 1) whether he had reached maximum medical improvement since all treatment and diagnostic tests recommended which could benefit Pilate have not been undertaken; 2) whether Pilate sustained a 5 percent permanent impairment rating to his body as a whole as a result of his work related injury; and 3) whether he suffered a loss of wage earning capacity as a result of his work-related injury are factual determinations inclusive in the issue of whether the Commission, in reaching its decision, was erroneous as a matter of law and made factual findings unsupported by substantial evidence.
¶ 12. The standard of review in workers' compensation cases has clearly been established in our prior holdings. The Workers' Compensation Commission sits as the "ultimate finder of facts" in deciding compensation cases, and therefore, "its findings are subject to normal, deferential standards upon review." Natchez Equipment Co., Inc. v. Gibbs, 623 So.2d 270, 273 (Miss. 1993). As a court of appeal, we are limited in scope when reviewing factual issues on appeal from the Commission and are bound by the following:
Under settled precedent, courts may not hear evidence in compensation cases. Rather, their scope of review is limited to a determination of whether or not the decision of the commission is supported by the substantial evidence. If so, the decision of the commission should be upheld. The circuit courts act as intermediate courts of appeal. The Supreme Court, as the circuit courts, acts as a court of review and is prohibited from hearing evidence or otherwise evaluating evidence and determining facts; ... "[W]hile appeals to the Supreme Court are technically from the decision of the Circuit Court, the decision of the commission is that which is actually under review for all practical purposes."
As stated, the substantial evidence rule serves as the basis for appellate review of the commission's order. Indeed, the substantial evidence rule in workers' compensation cases is well established in our law. Substantial evidence, though not easily defined, means something more than a "mere scintilla" of evidence, and that it does not rise to the level of "a preponderance of the evidence." It may be said that it "means such relevant evidence as reasonable minds might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording *775 a substantial basis of fact from which the fact in issue can be reasonably inferred."
Delta CMI v. Speck, 586 So.2d 768, 772-73 (Miss.1991) (citations omitted).
¶ 13. As to matters of law, we exercise de novo review. Spann v. Wal-Mart Stores, Inc., 700 So.2d 308(¶ 12) (Miss.1997). With this standard of review in mind, we will reverse the Commission's rulings only where issues of fact are unsupported by substantial evidence and matters of law are clearly erroneous.
¶ 14. The administrative law judge's findings, as affirmed by the Commission and the circuit court, concluded that although Pilate sustained a work related injury on January 21, 1995 and had received temporary total disability benefits, while not concurrent with the actual dates of his disability, Pilate had reached maximum medical recovery on May 3, 1995 as indicated and supported by the testimony of his treating physician, Dr. Childress. Further, that despite Dr. Childress's assignment of a 5 percent impairment rating to the body as a whole, which was based on Pilate's subjective complaints of pain and not on any objective medical findings as testified to by Dr. Childress, Pilate failed to meet his burden of proving he was entitled to additional benefits beyond those he has already received due to Pilate's failure to show any industrial loss of wage earning capacity.
¶ 15. The testimony of Dr. Alexander, an independent neurosurgeon selected by the employer/carrier, reveals that based upon his March 18, 1996 examination of Pilate he was unable to find any objective neurological deficits and therefore assigned Pilate a zero percent impairment rating. Dr. Alexander's examination revealed normal strengths, sensations, and reflexes with normal movement on all axes. Dr. Alexander further remarked that Pilate had free range of motion and that straight leg testing produced negative results. Dr. Alexander diagnosed Pilate with muscoskeletal low back pain, but that in his opinion Pilate's subjective complaints of pain were insufficient to support removing him from the workforce absent any objective corroboration. Dr. Alexander also testified he conducted a review of Pilate's medical history upon completion of his examination on March 18, 1996.
¶ 16. The medical findings and conclusions reached by Dr. Alexander are not in complete contradiction with the findings and conclusions of Pilate's own physician, Dr. Childress. Based upon Dr. Childress's February 23, 1995 examination he concluded that Pilate was suffering from back strain, muscular in nature, and found mild spasm along the lumbar spine when forward flexion reached 60 degrees. Dr. Childress further noted that Pilate's CT scans and neck mobility were normal, his reflexes were symmetrical, his x-rays were unremarkable and that no surgery was recommended. Both Drs. Childress and Alexander agreed on the absence of any substantial objective medical evidence; however, their respective opinions differ as to the level of a permanent impairment rating.
¶ 17. As previously stated, as a court of appeals we are limited in scope when reviewing issues of factual determination. As the "ultimate finder of facts", the Workers' Compensation Commission's findings are to be left untouched and intact absent a decision which is unsupported by substantial evidence. Natchez Equipment Co., Inc., 623 So.2d at 273. Substantial evidence is something more than a "mere scintilla" of evidence but less than a "preponderance of the evidence." Delta CMI, 586 So.2d at 772-73. The decision reached by the administrative law judge, as affirmed by the Commission and the circuit court, falls squarely within these confines.
¶ 18. Both physicians agree, as is supported by their respective testimony, that Pilate suffers, and may continue to experience some difficulty, from muscoskeletal low back pain. Both agree as to the absence of any objective neurological deficits and that in this absence the only medical evidence of continuing pain and discomfort are the subjective complaints voiced by Pilate. Further, both physicians agree that a period of work hardening would benefit Pilate's return to the workforce. The only apparent discrepancy between the conclusions of Dr. Childress and Dr. Alexander concerns the 5 percent permanent impairment rating by Dr. Childress.
¶ 19. It is readily apparent from the record that over the course of Pilate's treatment and examinations, an array of tests including x-rays, *776 CT scans and reflex and motion skills tests were performed, yet Pilate maintains he has not reached maximum medical improvement because the full spectrum of available testing which could benefit Pilate were not performed. The testimony of Dr. Childress regarding the need for additional testing beyond that which already had been performed reveals statements inconsistent with Pilate's contention. When asked if Pilate had received all of the medical care and treatment which could have been provided to him, Dr. Childress stated that there were additional testings such as MRI scans and myelograms that could benefit Pilate. However, Dr. Childress also stated that in his opinion they would return normal results based on Pilate's previous CT scan results.
¶ 20. Therefore, based on the medical testimony provided by both physicians and the whole of the evidence as presented to the Commission, we cannot conclude that the Commission's decision was unsupported by substantial evidence. Therefore, this assignment is without merit.
¶ 21. THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, KING, PAYNE and SOUTHWICK, JJ., concur.
IRVING and LEE, JJ., not participating.