801 So.2d 739 (2000)
Phina Leah ROBINETTE, Appellant
v.
HENRY I. SIEGAL COMPANY and Royal Insurance Company of America, Appellees.
No. 1999-WC-00094-COA.
Court of Appeals of Mississippi.
January 18, 2000.
Rehearing Denied April 4, 2000.
Certiorari Denied July 20, 2001.
*741 Keith Sanders Carlton, Corinth, Attorney for Appellant.
Keith R. Raulston, Jackson, Attorney for Appellees.
BEFORE McMILLIN, C.J., MOORE, AND THOMAS, JJ.
McMILLIN, C.J., for the Court:
¶ 1. Phina Leah Robinette has appealed a judgment of the Circuit Court of Tishomingo County affirming a decision of the Mississippi Workers' Compensation Commission. The Commission awarded Robinette a total of twenty-four weeks of benefits arising out of her work-related repetitive motion injuries to both upper extremities. Robinette's appeal advances the proposition that the uncontradicted evidence demonstrates a substantially higher percentage of permanent partial disability to her extremities than the Commission determined so that she is entitled to significantly increased benefits under the applicable workers' compensation laws of this State. Finding that there is substantial evidence in the record to support the findings of the Commission, we affirm.

I.

Facts
¶ 2. Robinette worked for Henry I. Siegal Company (hereafter "H.I.S.") in its blue jeans assembly plant. Her duty consisted of attaching pockets to the jeans. She was a production worker; that is, her level of compensation depended on the number of such attachment operations she *742 was able to complete. After beginning to experience pain in both arms, Robinette was diagnosed with carpal tunnel syndrome in her right wrist and left lateral epicondylitis in her left elbow. There is no dispute that these repetitive-motion injuries were attributable to her work at H.I.S.
¶ 3. After a course of conservative treatment failed to alleviate her pain, Robinette left H.I.S. and obtained work in the field of insurance sales and account servicing. Her hope was that this would end her problems of pain in her arms. However, the symptoms did not subside and ultimately Robinette underwent two surgical procedures. One was a carpal tunnel release on her right wrist and the other was a release of the lateral epicondylectomy on her left elbow. Dr. Randall Frazier, who performed both surgeries, was of the opinion that Robinette reached maximum medical improvement from both surgeries on July 25, 1995. He offered the opinion that Robinette had a 5% permanent partial medical disability to her right arm and a 7% permanent partial medical disability to her left arm arising out of her work-related injuries and the ensuing surgical procedures. Dr. Frazier testified that, beyond this slight permanent partial disability rating, he did not place any permanent restrictions on Robinette's future physical activities.
¶ 4. Dr. Frazier did testify that he cautioned Robinette against the advisability of continuing employment that involved repetitive motions similar to those at her job with H.I.S. However, he testified that this advice was based primarily upon the conclusion that Robinette was physiologically disposed to such injuriesa condition that predated her employment at H.I.S.and not particularly because continued stress of this nature would aggravate a condition attributable to her previously-incurred injuries.
¶ 5. The administrative judge ruled that Robinette had suffered an industrial disability to her extremities that was substantially in excess of the functional disability rating given by Dr. Frazier. The judge awarded her a 40% industrial disability to her right arm and a 50% industrial disability to her left arm and ordered benefits to be paid accordingly. Both Robinette and H.I.S. appealed this ruling to the full Commission. H.I.S. contended that there was not substantial evidence in the record to support a finding of such substantial disability. Robinette contended that the evidence indicated that she, in fact, had a 100% industrial disability to both arms and that she was, therefore, permanently and totally disabled.
¶ 6. The Commission concluded that there was no evidence that the permanent residual effect of Robinette's injuries was such that she had incurred a loss of ability to perform the normal duties of her former employment that exceeded the functional or medical disability testified to by Dr. Frazier. As a result, the Commission found that the only proper award was one based on the uncontradicted and unimpeached medical evidence of percentage of disability offered by Dr. Frazier and awarded benefits accordingly. Robinette appealed the Commission's holding, without success, to the Circuit Court of Tishomingo County. She now brings her appeal to this Court in which she purports to raise two issues. However, both issues advanced by Robinette involve the single question of whether there is substantial evidence in the record to support the decision of the Commission and we will confine ourselves to that issue in our discussion.

II.

Discussion
¶ 7. Several general principles of law affect our deliberations in this case. *743 The Commission, and not the administrative judge, acts as the ultimate fact-finder in a contested compensation proceeding. R.C. Petroleum, Inc. v. Hernandez, 555 So.2d 1017, 1021 (Miss.1990). Therefore, on appeal, this Court is obligated to give substantial deference to the findings of fact made by the Commission and may disturb such findings only if they are not supported by substantial evidence in the record. Natchez Equip. Co. v. Gibbs, 623 So.2d 270, 273 (Miss.1993); Pilate v. International Plastics Corp., 727 So.2d 771, 774 (Miss.Ct.App.1999). It is the claimant's burden to establish her entitlement to compensation, and the question of the existence and extent of any permanent disability arising out of a work-related injury is a question of fact for the Commission to determine based on the evidence before it. American Potash & Chemical Corp. v. Rea, 228 So.2d 867, 868 (Miss.1969); Ware v. Hillcraft Furniture, 724 So.2d 512(¶ 33) (Miss.Ct.App.1998).
¶ 8. This State's workers' compensation statutes guarantee some measure of compensation to an injured worker who suffers a permanent functional impairment to a "scheduled member" as the result of a work-related injury. Miss.Code Ann. § 71-3-17(c) (Rev.1995); Smith v. Jackson Constr. Co., 607 So.2d 1119, 1126 (Miss.1992). An arm is one of the scheduled members listed under Section 71-3-17(c). Miss.Code Ann. 71-3-17(c) (Rev. 1995). The measure of compensation in such a case depends on two factors; namely, (a) the degree of functional loss of use as demonstrated by the medical evidence, normally expressed as a percentage, and (b) the impact that the loss of function of the particular scheduled member has on the worker's ability to perform the normal and customary duties associated with her usual employment. Smith v. Jackson Constr. Co., 607 So.2d at 1128; General Electric Co. v. McKinnon, 507 So.2d 363, 365 (Miss.1987); Hollingsworth v. I.C. Isaacs and Co., 725 So.2d 251(¶ 10) (Miss. Ct.App.1998). This second aspect of disability determination has been referred to as the degree of industrial disability as opposed to the medical or functional disability. Robinson v. Packard Electric Division, General Motors Corp., 523 So.2d 329, 331 (Miss.1988). The degree of industrial disability is a question of fact to be determined from the evidence "including the testimony of the appellee and the other witnesses who testified during the hearing concerning the [claimant's] ability to use the [scheduled member] for wage earning purposes after the injury." McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167 (Miss.1991).
¶ 9. The permanently-injured worker is, under the scheme now in place in this State as discussed in Smith v. Jackson Construction Company entitled to compensation based on the greater of the percentage of functional disability or the percentage of industrial disability. Smith v. Jackson Constr. Co., 607 So.2d at 1127. Thus, a worker who suffers an injury that results in a permanent physical or functional impairment of a scheduled member is entitled to compensation computed on the percentage of that disability even if it may be demonstrated beyond equivocation that the impairment has not the slightest effect on the worker's ability to perform the typical duties of her usual employment. On the other hand, it appears to be the rule that where an injury has an impact on the injured worker's ability to perform the typical functions associated with her particular employment that is greater, when expressed in terms of a percentage, than the functional or medical percentage of impairment, the worker is entitled to permanent partial disability payments computed according to this higher percentage. *744 Hollingsworth v. I.C. Isaacs and Co., 725 So.2d 251(¶ 10) (Miss.Ct.App.1998). The rule permitting greater compensation in such circumstance appears to confine itself to the ability of the worker to perform the typical duties of his usual employment. Unlike other areas of compensation, the award of increased benefits based on a higher industrial disability determination for a scheduled member may not be reduced by showing that there are other jobs, unrelated to the worker's present employment, for which the worker might be qualified.
¶ 10. It is in the matter of computing the appropriate level of disability to Robinette's two upper extremities that she claims the Commission committed manifest error. Robinette urges that it is uncontradicted that, even though the permanent medical impairment to her arms was below ten percent in both cases, she is physically unable to return to a work situation that consists almost exclusively of the repetitive motion required to attach pockets to blue jean pants. She goes so far in her brief as to suggest that, based on the uncontradicted evidence, this Court ought to reverse the order of the Commission and render an award in her favor. She does not explicitly suggest whether the award she would have us render in her favor ought to be based on the 40% and 50% levels of industrial disability found by the administrative judge, or whether it ought to be based on a finding that she is totally industrially disabled on the theory that the injuries to both of her arms are one hundred percent industrially disabling as to her former work at H.I.S., and, under Section 71-3-17(a), the "[l]oss of both... arms ... shall constitute permanent total disability." Miss.Code Ann. § 71-3-17(a) (Rev.1995).
¶ 11. Robinette urges that the Commission's error was not in its fact-finding but was a fundamental error of law; thereby suggesting that the Commission misunderstood its obligation to award her more than her percentage of medical disability once she proved that her injuries had a substantially greater impact on her ability to perform her usual employment.
¶ 12. We conclude that the issue before us hinges on the Commission's findings of fact and not on whether the Commission misinterpreted the law applicable to the facts of the case. We also conclude that there is substantial evidence in the record to support the critical finding of the Commission regarding the degree of Robinette's permanent disability. We disagree with Robinette's position that the evidence is uncontradicted that her injuries had a substantially greater impact on her ability to perform the typical duties of her employment than was indicated by the degree of medical impairment assigned by Dr. Frazier.
¶ 13. Specifically, Robinette places too much emphasis upon Dr. Frazier's testimony that he advised Robinette to seek alternate employment that did not involve the repetitive motions associated with her work at H.I.S. There is substantial evidence in the record, found in Dr. Frazier's deposition, that his advice to her was based, not upon the permanently disabling nature of her existing injuries (injuries which were, to a large extent, corrected by surgical procedures that left only a minimal residual functional disability), but on the doctor's view that Robinette was numbered among those persons who, for reasons he could not explain, were peculiarly susceptible to suffering those types of injuries. He specifically stated at one point that his fear was that her injuries would recur were she to resume similar employment.
¶ 14. That being the case, Robinette's prior injuries from which she had *745 substantially recovered, subject only to some minor permanent loss of function, could no more be seen as causing her disability than would be the case had Dr. Frazier been able to diagnose her physiological propensity to suffer such injuries prior to their manifestation and advised her, as a precautionary measure, to seek other employment. The propensity to suffer such injuries in situations where others engaged in similar work might not encounter similar problems is not, of itself, a work-related injury. That proposition is not changed by the fact that the existence of such propensity is discovered only after one such series of injuries had been suffered.
¶ 15. Dr. Frazier was quite clear, in his written reports and in his deposition, that he assigned no restrictions on Robinette's physical activities as a result of the aftermath of her previous injured condition and corrective surgeries. Insofar as the evidence in this record demonstrates, Robinette has made a complete recovery from her injuries, subject only to those minimal permanent medical impairments assigned by Dr. Frazier. Her decision not to return to her previous employment after her substantial recovery may have been prudent based on the likelihood that such injuries would reoccur, but that is not the same thing as saying that her previous work-related injuries continued to render her disabled from resuming her former employment.
¶ 16. There is substantial evidence in the record to support a determination that Robinette failed to demonstrate that her industrial disabilities, as measured by her ability to perform her usual pre-injury employment, exceeded the functional impairment indicated by the expert medical evidence. There is, therefore, no basis for this Court to disturb the decision of the Commission.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF TISHOMINGO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, MOORE, AND THOMAS, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY LEE AND PAYNE, JJ.
DIAZ, J., dissenting:
¶ 18. I respectfully dissent. Dr. Frazier testified that Robinette should not return to work at H.I.S. and should refrain from factory work altogether. Because she is unable to perform the substantial duties of her employment, I would find that Robinette suffers from a 100% total disability and therefore may recover for the maximum number of weeks allowed under the Workers' Compensation Act.
¶ 19. "Generally, `medical' disability is the equivalent of functional disability and relates to actual physical impairment. `Industrial' disability is the functional or medical disability as it affects the claimant's ability to perform the duties of employment." Robinson v. Packard Elec. Div., 523 So.2d 329, 331 (Miss.1988). Thus, the claimant's functional or medical disability may be only 15%, but when applied to the duties of employment, the result may be that the claimant suffers a much greater industrial disability. Marshall Durbin, Inc. v. Hall, 490 So.2d 877, 880-81 (Miss. 1986). The supreme court has quoted with approval the following definition of total disability, particularly applicable in those situations where the degree of claimed industrial disability exceeds the actual medical or functional disability:
In this connection, a partial loss of functional use may result in total disability, *746 and to reach this result it is not necessary that the employee be wholly incapacitated to perform any duty incident to his usual employment or business; but if he is prevented by his injury from doing the substantial acts required of him in his usual occupation, or if his resulting condition is such that common care and prudence require that he cease work, he is totally disabled within the statute.
Piggly Wiggly v. Houston, 464 So.2d 510, 512 (Miss.1985)(quoting DUNN, MISSISSIPPI WORKMEN'S COMPENSATION, § 86 at 102-103 (3d ed.1982)) (emphasis added).
¶ 20. Robinette testified that her past employment experience consisted almost entirely of work in sewing factories. She began work at a sewing factory in 1974 following the birth of her child and remained there for approximately one and one-half years. She then worked at the Bluebell factory as a sewing machine operator until 1980. Following a brief stint as a laborer, Robinette returned to Bluebell where she remained for eight years. During this time, the company underwent several corporate transitions, becoming Wrangler, Tishomingo Apparel and finally Angelica. After eight years, Robinette left Angelica to begin work at H.I.S. as a surge operator.
¶ 21. By reason of her injury, Robinette is prevented from doing the substantial acts required of her as a seamstress or production worker in a sewing factory. Dr. Frazier, the only physician to testify, assigned Robinette a 5% permanent partial medical disability to her right arm and a 7% permanent partial medical disability to her left arm. Although he placed no restrictions upon Robinette returning to work at H.I.S., he did advise her to seek other employment. According to Dr. Frazier, those who return to repetitive motion activities usually have a recurrence of the injury; therefore, Robinette should avoid any employment position requiring her to perform repetitive motions, namely factory work.
¶ 22. In some cases, despite a partial functional loss of a scheduled member, the claimant's industrial or occupational disability or loss of wage earning capacity controls his degree of disability. In McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 168 (Miss.1991), the claimant suffered an injury to his leg which prevented him from returning to his employment at a furniture company. His physician expressed the opinion that the claimant suffered from a 40% permanent partial impairment of his left leg as a result of the injury. Id. at 167. The supreme court reversed the Commission's determination that the claimant suffered only a 40% industrial loss of his leg, holding that he suffered a 100% industrial loss of use. Id. at 168. The court explained that "[t]he whole of this evidence indicates that McGowan is certainly limited in the jobs he will be able to perform in the future. The jobs which he has performed in the past, such as construction and carpentry work and delivering furniture, will no longer be alternatives." Id. See also Piggly Wiggly v. Houston, 464 So.2d 510, 513 (Miss.1985) (20% medical disability, but 100% permanent industrial impairment); Richey v. City of Tupelo, 361 So.2d 995, 997-98 (Miss.1978) (50% permanent functional loss of right arm, but 100% permanent industrial impairment); M.T. Reed Constr. Co. v. Martin, 215 Miss. 472, 474-78, 61 So.2d 300 (1952) (10% permanent medical disability to lower right leg, but 100% industrial disability); Tyler v. Oden Constr. Co., 241 Miss. 270, 272-73, 130 So.2d 552, 553 (1961), (50% disability rating to leg and ankle, but 100% industrial disability); McManus v. Southern *747 United Ice Co., 243 Miss. 576, 584, 138 So.2d 899, 901-02 (1962) (20% disability rating to arm, but 100% industrial disability).
¶ 23. The majority contends that "Robinette places too much emphasis upon Dr. Frazier's testimony that he advised Robinette to seek alternate employment that did not involve the repetitive motions associated with her work at H.I.S." Dr. Frazier did advise that Robinette seek employment in another field. When asked if Robinette's change of job was pursuant to his recommendation, Dr. Frazier replied, "I'm sure it probably was.... And basically our plan was that if we couldif she could get into a job where she was not using either arm, that I told her she had a good chance that the symptoms would resolve and she wouldn't need surgery." The humanitarian objects of compensation laws should not be defeated by over-emphasis on technicalities or by putting form above substance. DUNN, at § 32. When the whole evidence is considered, it leads to the inescapable conclusion that Robinette, by reason of her injury, is prevented from doing the substantial acts required of her as a seamstress.
¶ 24. The only evidence the Commission had before it was the testimony of Dr. Frazier and Robinette. The medical testimony indicated that a patient with carpal tunnel syndrome or lateral epicondylitis should not perform the type of duties Robinette was performing at the time of her injuries. Robinette testified that she sought other employment as a result of the doctor's recommendation. I would find that Robinette is unable to perform the substantial acts of her usual occupation; her injuries put off limits certain desirable employment for which she was theretofore suited. Accordingly, I would hold that Robinette has suffered a 100% permanent total disability. She should recover for the maximum number of weeks allowed under the Workers' Compensation Act.
LEE AND PAYNE, JJ., JOIN THIS SEPARATE OPINION.