919 So.2d 149 (2005)
Lillian GOODLOW, Appellant
v.
MARIETTA-AMERICAN and Employers Insurance of Wausau, Appellees.
No. 2004-WC-01027-COA.
Court of Appeals of Mississippi.
May 31, 2005.
*150 David L. Walker, attorney for appellant.
Robert F. Stacy, Christine B. Tatum, Oxford, attorneys for appellees.
Before BRIDGES, P.J., CHANDLER and ISHEE, JJ.
BRIDGES, P.J., for the Court.
¶ 1. Following a hearing before an administrative judge, Lillian Irene Goodlow was awarded seventeen and one-half weeks of permanent partial disability benefits arising out of a work-related injury to her leg. Believing she presented evidence that proved her injury resulted in a loss of wage earning capacity, Goodlow filed a petition for review with the Mississippi Workers' Compensation Commission. The Full Commission affirmed the decision, so she appealed to the Circuit Court of DeSoto County, which also affirmed. Goodlow subsequently appealed to this Court advancing a single issue:

I. WAS THE DECISION OF THE COMMISSION ERRONEOUS AS UNSUPPORTED BY SUBSTANTIAL EVIDENCE?
¶ 2. Our review of the record reveals that no such error occurred, and we accordingly affirm.

*151 FACTS AND PROCEDURAL HISTORY
¶ 3. Goodlow testified that her employment with Marietta-American (hereinafter "Marietta") in Olive Branch, Mississippi, began on March 15, 2000. She stated that her position with the company was that of a machine operator and that she was responsible for operating the entire production line in the manufacture of Jergens soap. Goodlow explained that the physical demands of her position required that she be able to climb, lift approximately fifty pounds, and remain on her feet throughout an entire eight-hour work day.
¶ 4. While at work on March 22, 2000, Goodlow slipped on some water and fell to the floor. She reported the incident to her supervisor and was then promptly taken to St. Francis Hospital in Memphis, Tennessee, where she was examined by Dr. Robert Bourland, an orthopedic surgeon. The examination subsequently revealed that Goodlow fractured the fibula and tibia in her left leg when she fell and that she would need surgery. Dr. Bourland operated on Goodlow's leg the following day.
¶ 5. Thereafter, Dr. Bourland routinely examined Goodlow to assess her postoperative progress, which was marked with consistent improvement. In accordance with her improvement, Dr. Bourland allowed her to return to work on September 13, 2000, at a sedentary job for four hours per day. He then discharged Goodlow from his care, at her request, on January 17, 2001, to full duty with no restrictions and gave her a permanent partial impairment rating of ten percent to her left, lower extremity, which he approximated as a four percent impairment to her person as a whole. Goodlow subsequently returned to Marietta as a machine operator working the same number of hours and earning the same pay as she had before being injured; however, in March, only two months later, she voluntarily terminated her employment there. Goodlow testified that after leaving Marietta she held at least four other jobs but claimed she could not remain at them due primarily to her leg problems.
¶ 6. On July 6, 2001, Goodlow filed a petition to controvert with the Mississippi Workers' Compensation Commission claiming that she sustained a work-related injury to her left leg on March 22, 2000, when she slipped and fell on a wet floor while in the course and scope of her employment at Marietta. Marietta's insurance carrier was Employers Insurance Company of Wausau (hereinafter "E.I.C.").
¶ 7. Marietta and E.I.C. agreed with Goodlow in claiming that she sustained a compensable injury; however, they contested her claim of loss of wage earning capacity. Marietta, E.I.C., and Goodlow additionally did not dispute Goodlow's average weekly wage at the time of her injury, which was $378, and the fact that Marietta and E.I.C. had paid temporary total disability benefits in the amount of $250 per week and had provided medical services. Following a hearing on October 24, 2002, the administrative judge held that Goodlow presented no evidence showing a greater industrial disability than that revealed by the medical evidence, reflecting a ten percent impairment to her left, lower extremity, and subsequently ordered Marietta and E.I.C. to pay Goodlow permanent partial disability benefits in the amount of $250 per week for a period of seventeen and one-half weeks, with credit for any benefits already paid. Both the Full Commission and the Circuit Court of DeSoto County affirmed, so Goodlow now comes before this Court presenting her challenge to said decision.

LAW AND ANALYSIS
¶ 8. In workers' compensation cases, the Commission, and not the administrative *152 judge, is the ultimate fact-finder. Robinette v. Henry I. Siegal Co., 801 So.2d 739, 743(¶ 7) (Miss.Ct.App.2000). Therefore, we proceed in our review, as an appellate court, giving substantial deference to the Commission's findings of fact, and we have no authority to disturb such findings so long as they contain no error of law and are supported by substantial evidence. Id. A question as to the existence and extent of any permanent disability arising out of a work-related injury is a question of fact, and the claimant bears the burden of presenting to the Commission sufficient evidence to establish that she is entitled to compensation. Id.
¶ 9. When Goodlow fell, she undisputedly sustained a compensable injury to her leg, which is a "scheduled member" under Miss.Code Ann. § 71-3-17(c) (Rev. 2000). Under Mississippi's Workers' Compensation Law, a worker who suffers a permanent functional impairment to a "scheduled member" as a result of a work-related injury is guaranteed some measure of compensation, and the appropriate measure of such compensation is dependant upon two particular factors: (a) functional, or medical, disability"the degree of functional loss of use as demonstrated by the medical evidence," and (b) industrial, or occupational, disability"the impact that the loss of function of the particular scheduled member has on the worker's ability to perform the normal and customary duties associated with her usual employment." Id. at (¶ 8). These two factors are significant in that the permanently injured worker is entitled to compensation in accordance with which percentage between them is greater. Id. at (¶ 9).
¶ 10. Mississippi's long-standing law declares that an injured worker must support her claim of disability with medical findings. Miss.Code Ann. § 71-3-3(I) (Rev.2000); Cole v. Superior Coach Corp., 234 Miss. 287, 291, 106 So.2d 71, 72 (1958). In the case at bar, the Commission found that Goodlow presented medical evidence showing only that she sustained a permanent functional impairment of ten percent to her left leg, so Marietta and E.I.C were ordered to pay benefits accordingly.
¶ 11. Goodlow, however, maintains that, as a result of her injury, she suffered a loss of wage earning capacity, thereby suffering a percentage of industrial impairment greater than that awarded by the Commission. Goodlow concedes that a claim of incapacity to earn wages, and the extent thereof, must be supported by medical findings; however, she contends that she proved such incapacity considering that the aforementioned "requirement is met when the fact and extent of incapacity is corroborated in part by medical testimony." Greenwood Utilities v. Williams, 801 So.2d 783, 792(¶ 31) (Miss. Ct.App.2001) (citing DUNN, MISSISSIPPI WORKMEN'S COMPENSATION, LAW AND PRACTICE RULES AND FORMS, § 70 (3rd ed.1982)). In Greenwood Utilities, the court goes on to explain that a determination of incapacity and the extent thereof is not based solely on medical findings but that "the commission is required to consider all of the testimony and all of the pertinent factors, including physical or functional disability from the medical viewpoint and any demonstrated impairment of the claimant's capacity to secure and retain employment and perform the work for which he is qualified." Id. Goodlow argues that the decision of the Commission requires reversal based on its erroneous conclusion that she "failed to establish that she can no longer perform the substantial acts of her actual employment at the time of her injury." Goodlow maintains that such conclusion cannot possibly be supported by substantial evidence considering the medical evidence along with her testimony as to *153 the facts that (a) prolonged standing caused pain and swelling in her leg; (b) to alleviate said discomfort at the end of each work day required that she elevate her leg; (c) Marietta would not offer her a job that allowed her to sit despite knowing her need for such job; and (d) her attempts at employment following her departure from Marietta proved unsuccessful due to the swelling in her leg.
¶ 12. We conclude, however, that Goodlow's claim is unfounded. According to her testimony, Goodlow left Marietta, as well as the jobs she subsequently held, voluntarily. She presented no evidence demonstrating that she was unable to perform the work required of her, nor that her employers complained of the work she had performed. Furthermore, Goodlow's claim that she can't maintain such employment due to her leg remains unsupported by any medical evidence considering that Dr. Bourland assigned to her injury a medical impairment rating of only ten percent permanent impairment of the left, lower extremity before releasing her from his care with no restrictions, no prescribed pain medications, and no scheduled follow-up visits. Accordingly, the decision of the Commission is supported by substantial evidence, so we must affirm its finding that Goodlow sustained no loss of wage earning capacity.
¶ 13. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
KING, C.J., LEE, P.J., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., concur.