IRVING, P.J.,
FOR THE COURT:
¶ 1. Arrisha Sampson appeals the judgment of the Mississippi Workers’ Compensation Commission (Commission), arguing that the Commission erred in determining that she failed to prove she suffered a disability that amounted to an industrial loss of use greater than the.medical impairment percentage she was assigned by her doctor.[1]
¶ 2. Finding no error, we affirm.
FACTS
¶3. Sampson began working for MTD Products (MTD) in 2010 as a production assembler. As a production assembler, she was required to stoop, kneel, crouch, and regularly lift and/or move items weighing ten to twenty-five pounds. On May 15, 2012, a piece of galvanized steel fell and lacerated Sampson’s left ankle. She was treated at a clinic and returned to work within a few days. On September 18, 2012, Sampson hyperextended the same ankle.[2] Sampson, again, went to a clinic for treatment; however, on this occasion she was referred to orthopedic surgeon Dr. Kurre Luber. In November 2012, Dr. Luber performed surgery on Sampson’s ankle to treat a torn Achilles tendon. In January 2013, while still attending therapy, she returned to work for MTD.[3] On April 22, 2013, Dr. Luber placed Sampson at maximum medical improvement with no restrictions, assigning her a two-percent permanent medical impairment rating to her left lower extremity due to her work injury.
¶ 4. Thé parties stipulated that there were no issues regarding Sampson’s temporary disability or her medical treatment. However, the parties disagreed on the existence and extent of permanent disability attributable to her injuries. In May 2013, Sampson filed her petitions to controvert with the Commission. After a hearing, the administrative judge (AJ) found that Sampson had suffered a ten-percent indus *543 trial loss of use to her left lower extremity and would be entitled to proportional disability benefits.
¶5. MTD appealed that decision, and the full Commission reversed the AJ’s decision and found that Sampson was only entitled to a two-percent industrial loss of use, consistent with Dr. Luber’s two-percent permanent medical impairment rating. Sampson now appeals the decision of the Commission to this Court.
DISCUSSION
¶ 6. The standard of review in a workers’ compensation case is well settled: “If the findings of the Commission are supported by substantial evidence, then they are binding on this Court. As to matters of law, our review is de novo, but the [Commission’s] interpretation of workers’ compensation law is to be accorded great weight and deference.” Kimbrough v. Fowler’s Pressure Washing, LLC, 170 So.3d 609, 611 (¶ 5) (Miss. Ct. App. 2015).
¶7. The sole issue in this case is whether Sampson sustained any industrial loss of use in excess of her medical impairment rating. As stated, the AJ determined that Sampson had suffered a ten-percent industrial loss of use; however, the Commission reversed the AJ’s decision, deciding instead that Sampson had only suffered a two-percent industrial loss of use, consistent with her permanent medical impairment rating. Despite Sampson’s arguments to the contrary, we find that there is substantial evidence[4] in the record to support the Commission’s decision.
¶ 8. The measure of compensation in a workers’ compensation claim where the claimant suffers a permanent functional impairment to a scheduled member[5] depends on two factors: “(a) the degree of functional loss of use as demonstrated by the medical evidence, normally expressed as a percentage, and (b) the impact that the loss of function of the particular scheduled member has on the worker’s ability to perform the normal and customary duties associated with her usual employment.” Robinette v. Henry I. Siegal Co., 801 So.2d 739, 743 (¶8) (Miss. Ct. App. 2000).[6] “In order to prove a loss of industrial use, [the claimant] has the burden of proving that her job-related injury caused her to suffer a loss of wage earning capacity above and beyond her impairment rating.” Posey v. United Methodist Senior Servs., 773 So.2d 976, 980 (¶ 11) (Miss. Ct. App. 2000); see also Howard Indus., Inc. v. Robbins, 176 So.3d 113, 117 (¶ 19) (Miss. Ct. App. 2015) (noting that “[w]ith industrial, loss, the question ... is the degree of loss of use of the member for wage earning purposes”).
¶ 9. Sampson argues that the Commission erred in determining that she failed to prove she suffered a loss of industrial use greater than the permanent medical impairment percentage that she was assigned—a decision that she argues was not supported by substantial evidence. “It is the claimant’s burden to establish her entitlement to compensation, and the question of the existence and extent of any *544 permanent disability arising out of a work-related injury is a question of fact for the Commission to determine based on the evidence before it.” Robinette, 801 So.2d at 743 (¶ 7).
¶ 10. Sampson contends that she satisfied her burden of proof, as evidenced by her change in work position due to the pain associated with continued work at her pre-injury position. She asserts that the “need for a less physically demanding job is a prime example of the loss of functional use that goes beyond a ‘medical’ or ‘anatomical’■ impairment rating.” She also asserts that, in arriving at the decision reached by the AJ, the AJ weighed the impairment rating given by Dr. Luber, Sampson’s testimony regarding her continued pain, and her move to another assembly line with lighter work duties. Consequently,. she argues that the AJ’s decision was correct, and the evidence supports her additional loss of industrial use beyond her medical impairment rating. .
¶ 11. MTD correctly responds that the Commission’s decision is supported by substantial evidence and, therefore, should be affirmed. MTD argues that Sampson is not entitled to an industrial loss of use in excess of her medical impariment rating of two-percent,. as evidenced by the record. After Sampson’s surgery in November 2012, she was released by Dr. Luber to work for five-hour days on January 14, 2013, with no further restrictions, and then released to full-time work one week later. On April 22, 2013, Dr. Luber placed her at maximum medical improvement and released her from his care on an as-needed basis, stating, “She is now doing very well. She is .very happy with her outcome.” Sampson testified that she had not returned to see Dr. Luber for any additional treatment or prescription' refills after she reached maximum medical improvement.
II12. Following. her final appointment with Dr. Luber, she continued to work in her pre-injury position until August 2013, before requesting a change to a different assembly line. MTD notes that Sampson stated in her deposition the reason for the change: “It was just—the workload was getting • heavier, and when I got—when I was—when it was time to leave work, I had no energy for my son when I got home.” However, during the hearing she attributed the change to physically not being able to perform the job—because of her injury—in conjunction with her overall health. Nothing in Dr, Luber’s findings indicated that Sampson’s injury had produced any physical work restrictions sufficient to support a finding that she had an industrial loss of use in excess of her permanent impairment rating. Ip addition, although not completely outcome determi; native,[7] Sampson’s pay did not decrease between the change in positions, and she is actually making a higher salary now than she was pre-injury.
¶ 13. It is evident that Sampson’s eventual work-position change'and her’testimony regarding the continued: pain that she felt were major factors in the AJ’s decision to award a ten-percent industrial loss of use-. However, those findings do not make the Commission’s findings; as the finder of fact, any less substantial,[8] There was sub *545 stantial evidence to support the Commission’s findings as outlined in the Commission’s order as follows:
In this matter, Dr. Luber assigned to Claimant a [two-percent] medical impairment rating and no physical restrictions. Claimant has returned to work for the Employer performing her job at full duty. Claimant has not received any subsequent medical treatment, nor is the Claimant on any prescription medicine related to her injury. Further, Claimant is earning a higher post-injury average weekly wage of $530.89 compared to her pre-injury average weekly wage of $515.00. Based on the above analysis, the Commission finds that Claimant has failed to prove by a preponderance of the evidence that she has sustained any permanent disability in excess of her medical impairment rating.
¶ 14. Therefore, we affirm.
¶ 15. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, FAIR, WILSON, GREENLEE AND WESTBROOKS, JJ., CONCUR.

. This is a consolidated case as Sampson filed a petition to controvert with the Mississippi Workers’ Compensation Commission for two separate, but related, injuries.

. This injury was the basis for the second claim filed by Sampson.

.Dr. Luber released Sampson to work five-hour days on January 14, 2013, with resumption of full duties on January 21, 2013.

.Substantial evidence can be defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence means evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.” State Oil & Gas Bd. v. Miss. Mineral & Royalty Owners Ass'n, 258 So.2d 767, 779 (Miss. 1971).

. Miss. Code Ann. § 71-3-17 (Rev. 2011).

. Factor (a) refers to the two-percent medical impairment rating; which was given by Dr. Luber, and factor (b) refers to the industrial/occupational loss of use percentage, which differs between the AJ and the Commission.

. "[Ejvidence of higher post-injury wage earning does nót close the door to a finding that the industrial loss was greater than the functional loss. Rather, it is evidence the Commission must consider, along’ with other ' evidence about wage-earning capacity like the worker’s age, education, and work experience,” Robbins, 176 So.3d at 115 (¶ 3).

., “In a workers' compensation case, the ■ Commission is the trier and finder of facts. If supported by substantial evidence, the appellate court is bound by the determination of *545 the Commission .... ” Hugh Dancy Co. v. Mooneyham, 68 So.3d 76, 79 (¶ 6) (Miss. Ct. App. 2011).