725 So.2d 251 (1998)
Paul HOLLINGSWORTH, Appellant,
v.
I.C. ISAACS AND COMPANY & Liberty Mutual Insurance Company, Appellees.
No. 97-CC-01382 COA
Court of Appeals of Mississippi.
December 18, 1998.
Rehearing Denied February 23, 1999.
*253 Roderick D. Ward, III, Jackson, Attorney for Appellant.
Silas W. McCharen, Gretchen Luke Gentry, Jackson, Attorney for Appellee.
BEFORE McMILLIN, P.J., COLEMAN AND PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. This is a proceeding that originated before the Mississippi Workers' Compensation Commission. The Commission determined that Paul Hollingsworth had suffered a compensable injury to his arm during the course of his employment at I.C. Isaacs & Company; however, the Commission limited Hollingsworth's permanent disability compensation to a partial disability of a scheduled member. Hollingsworth, believing the severity of his disability warranted greater compensation, appealed to the Circuit Court of Newton County. That court affirmed the action of the Commission and Hollingsworth then perfected this appeal. For reasons which we will proceed to set out, we affirm the decision of the circuit court.

I.

Facts
¶ 2. There is no substantial dispute as to the facts. Hollingsworth was working for Isaacs & Company performing manual labor. He received an injury to his arm while at work in June 1993 when he attempted to stop a bolt of material from rolling into him. A treating physician determined that the injury had strained a previously-existing unhealed condition in the bone structure of Hollingsworth's arm. In order to correct the condition, Hollingsworth underwent a bone graft in December 1993. His subsequent recovery period was an extended one and he was not released as having reached maximum medical improvement until May 1995.
¶ 3. Hollingsworth's treating physician concluded that he had suffered a permanent impairment to his arm and estimated a twenty-five percent (25%) loss of function. The doctor concluded that Hollingsworth would be medically unable, because of his condition, to repeatedly lift items weighing more than five pounds. Hollingsworth's former position at Issacs & Company required an ability to perform lifting activities that exceeded the treating physician's recommended restrictions.
¶ 4. Hollingsworth asked to return to work at Isaacs & Company but his former employer declined to rehire him, claiming that he had violated the company policy that absences of over twelve months would result in termination unless explained by a doctor's statement presented to the company. After he was unable to return to work at Isaacs & Company, Hollingsworth obtained employment working in a surveying crew, a job in which he had some prior work experience. He subsequently left that job for reasons that were unrelated to any difficulties with his injured arm.
¶ 5. Hollingsworth claimed that he thereafter made repeated efforts to find employment in the area where he lived but that his lack of education and a prior work history of largely manual labor limited his employment possibilities to the degree that he could not find a job involving the reduced level of physical activity imposed by his disabling arm injury.
¶ 6. The administrative law judge, after considering all the evidence, concluded that Hollingsworth had a thirty-five percent (35%) industrial disability to a scheduled member; namely his left arm, and awarded compensation in the amount dictated by the statute based on that finding.
*254 ¶ 7. Hollingsworth appealed that ruling to the full Commission. The Commission adopted the findings and conclusions of the administrative law judge and, thus, affirmed the same amount of compensation. Hollingsworth's mandatory appeal to circuit court was without success. He now presents two issues for consideration by this Court.

II.

The First Issue: The Level of Permanent Disability
¶ 8. This Court finds Hollingsworth's attack on the determination of the extent of his permanent disability somewhat confusing. He frames the argument as being a claim that he was entitled to a finding that he had suffered a one hundred percent (100%) disability to his left arm, thus entitling him to statutory benefits for two hundred weeks under Section 71-3-17(c). However, much of his argument and much of the authority he cites is centered on the notion that the disability to his arm has, in actuality, rendered him totally unemployable. Of course, if that were the case, he would be entitled to substantially more compensation under Section 71-3-17(a) than he would for even the total loss of an arm under Section 71-3-17(c). In his argument summary, Hollingsworth goes so far as to suggest that he "should receive compensation for a total industrial loss to his arm and compensation for total loss of wage earning capacity."
¶ 9. While we reject the notion that an injured employee suffering the loss of a scheduled member is, in any case, entitled to pyramid his recovery in this manner, we will proceed to consider Hollingsworth's claim from both aspects.

A.

A Total Loss of Use of the Arm for Wage-Earning Purposes
¶ 10. Case law in Mississippi shows that an employee suffering an injury to a scheduled member that results in a permanent partial disability to that member is entitled to the greater amount of compensation determined under two alternate theories of computation. (There is, in actuality, a third level of compensation to which the injured worker may be entitled, which will be discussed separately under Section II.B. below.) First, a determination of functional disability of the member must be made and the appropriate level of compensation computed by multiplying the percentage of disability times the maximum number of weeks for the scheduled member times sixty-six and two-thirds percent (66 2/3%) of the employee's average weekly wage. Stuart Mfg. Co. v. Walker, 313 So.2d 574, 575 (Miss.1975). Then, alternatively, an industrial disability must be determined that is based, not just on the medical evidence, but upon evidence of how the limited function of the member affects the employee's ability to perform those duties normally associated with the claimant's job. Richey v. City of Tupelo, 361 So.2d 995, 997-98 (Miss.1978); Modern Laundry, Inc. v. Williams, 224 Miss. 174, 179-80, 79 So.2d 829, 832 (1955). The injured worker is then entitled to compensation based upon the higher of these two computations, but limited in all events, by the maximum compensation allowed under Section 71-3-17(c) for the injured member. Smith v. Jackson Const. Co., 607 So.2d 1119, 1128 (Miss.1992).
¶ 11. The legislature has devised a scheme that vests the responsibility for administering the workers' compensation law of the State in an administrative agency, the Mississippi Workers' Compensation Commission, and not in the judiciary. The Commission acts as fact finder in making determinations of the level of disability. General Elec. Co. v. McKinnon, 507 So.2d 363, 366 (Miss. 1987). Though the compensation laws contemplate the right of judicial review of the Commission's determinations, this Court is limited in its authority to review such determinations, and is required to give great deference to the work of the Commission. Id. The Mississippi Supreme Court has explicitly stated that it is not within the realm of a reviewing court's authority to re-weigh the evidence to determine whether the preponderance of evidence might favor a result contrary to the Commission's determination. Id. Rather, so long as there is substantial *255 evidence in the record to support the Commission's findings, this Court is obligated to affirm the Commission. Id.
¶ 12. In this case, there was competent evidence to support the proposition that there were jobs available for which Hollingsworth was qualified and that he could successfully perform despite the physical limitations imposed by the loss of some function in his arm. The treating physician only imposed weight restrictions on Hollingsworth's lifting with the arm and saw no particular impediment to Hollingsworth returning to some means of gainful employment. There was, in fact, no particularly persuasive evidence in the record that Hollingsworth had totally lost the ability to use his left arm while engaged in some type of gainful employment for which he was qualified by education and experience. The doctor testified to only a 25% functional impairment, but the Commission, viewing the evidence in its entirety, and, considering those job duties in positions Hollingsworth could reasonably be expected to qualify for, raised his industrial disability to 35%. There is, in all such determinations, some measure of arbitrariness, as the Mississippi Supreme Court has recognized. See, e.g., Walker Mfg. Co. v. Cantrell, 577 So.2d 1243, 1247 (Miss.1991). Nevertheless, such findings are a necessary part of the process of administering the State's compensation laws. We are satisfied that there was substantial evidence in the record that would tend to support the Commission's decision to rate Hollingsworth's permanent disability to his arm at 35%. There is, therefore, no basis for this Court to disturb the decision of the Commission.

B.

Was Hollingsworth Totally Disabled by his Arm Injury?
¶ 13. The law in Mississippi, since the supreme court's decision in Smith v. Jackson Const. Co., is that a worker suffering permanent injury to a scheduled member may, because of considerations reaching beyond the extent of his physical impairment, be effectively rendered incapable of engaging in any form of gainful employment, and, if that can be shown, the worker will be entitled to permanent total disability benefits calculated under Section 71-3-17(a). Smith v. Jackson Const. Co., 607 So.2d at 1128. The supreme court in the Smith v. Jackson Const. Co. decision ruled that this right to greater compensation was not, as had been previously held, limited in any way by the provisions of Section 71-3-17(c). Id.
¶ 14. Much of Hollingsworth's argument relies upon cases demonstrating that a worker whose opportunities for employment are limited to unskilled manual labor because of such factors as lack of education, lack of training, and lack of experience may be rendered unemployable by physical incapacities that would not be so devastating to a more multi-talented individual. See, e.g., DeLaughter v. South Central Tractor Parts, 642 So.2d 375, 379 (Miss.1994); McGowan v. Orleans Furniture, Inc., 586 So.2d 163, 167-68 (Miss.1991). While we readily concede this to be the law on the subject, we conclude that there is no credible evidence in this record that would suggest that Hollingsworth is now unemployable because of his arm problems. In fact, the record quite vividly demonstrates the opposite of that proposition since it is undisputed that Hollingsworth was able to obtain a job for which he was suited by experience and in which he was performing up to his employer's expectations. Though Hollingsworth testified that he was laid off from that job, his former employer testified that Hollingsworth had only been told to medically resolve the cause of an on-the-job fainting spell before coming back to work and that Hollingsworth had left never to return, though he would have been readily accepted back. On those facts, any argument that a 25% functional impairment of one arm rendered Hollingsworth totally unemployable borders on the frivolous.

III.

The Second Issue: A Misplaced Burden of Proof
¶ 15. Hollingsworth argues that the refusal of Isaacs & Company to put him back to work when he indicated a desire to return shifted the burden to the company to demonstrate *256 that there were other jobs reasonably available to Hollingsworth for which he was qualified by education and experience. He further argues that the company failed in that burden, the result being that he was entitled to a finding that he was totally and permanently disabled.
¶ 16. Isaacs & Company argues that this burden shift occurs only if the refusal to put the employee back to work was based on the worker's diminished work capacity arising out of his injury. In this case, the company argues, Hollingsworth was terminated for violating company policy regarding extended absences from work not supported by a timely-presented doctor's statement. Alternatively, the company argues that the proof that Hollingsworth did, in fact, obtain other suitable employment renders this issue moot.
¶ 17. We conclude that the second argument is more than sufficient to dispose of the issue. No matter whether the burden of proof fell on Hollingsworth to prove his unemployability or on Isaacs & Company to prove that he was employable in some suitable occupation, we are satisfied that evidence that Hollingsworth was, in fact, able to find gainful employment for which he was qualified by experience after he had reached maximum recovery from his surgery was sufficient to answer the question of his total disability adversely to him. The overwhelming weight of the evidence showed that Hollingsworth was performing his post-injury new job in a manner that was satisfactory in all respects to his employer and that his reasons for leaving that employment bore no relation to his previous arm injury or to complications arising out of that injury. This issue is, likewise, without merit.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF NEWTON COUNTY IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
DIAZ, J., CONCURS IN RESULT ONLY.