McMILLIN, C.J.,
for the Court:
¶ 1. This case originated as a proceeding before the Mississippi Workers’ Compensation Commission. William Entrikin sought compensation for disability alleged to have arisen out of a work-related injury occurring during his employment at Good-wood Lumber Company, Inc. The Commission awarded certain benefits to Entrikin. His employer and its workers’ compensation insurance carrier appealed the decision to the Circuit Court of DeSoto County. That court affirmed the Commission’s decision and this appeal followed. Finding no basis to disturb the Commission’s decision regarding compensability, we affirm.
I.
Facts
¶2. Entrikin was employed by Good-wood to work as a delivery truck driver. On April 26, 1994, while delivering an order that included a number of eighty-pound bags of concrete, Entrikin reported experiencing a sharp pain in his shoulder. Entrikin’s doctor attempted to treat his condition conservatively while Entrikin worked on “light duty” status, primarily behind the customer counter at his employer’s business.
¶3. Ultimately, after his pain failed to subside, a more intensive investigation revealed a ruptured cervical disk that was surgically removed and replaced with a bone graft obtained from his pelvic bone. Entrikin recovered from this surgery and was released to return to his former employment. The treating surgeon assigned Entrikin a ten percent disability to the body as a whole arising out of permanent physical impairment related to the surgery, but imposed no recommended limitations on his physical activities.
¶ 4. Entrikin resumed his work of delivering building supplies but testified that he was unable to properly perform the lifting duties associated with that position. He claimed that matters came to a head when he had to deliver and unload a number of doors on a Saturday morning without assistance. He said he strained his arm because of his inability to properly perform the unloading work. He left the job that day and did not return.
¶ 5. Entrikin performed odd jobs for his father for a few months in exchange for lodging and the use of a. vehicle, then obtained work for Federal Express at a distribution center where his duties consisted of sorting and re-routing packages and parcels. After four months of this *472 work, Entrikin testified he continued to experience severe pain that continued to grow worse. As a result, he returned to his treating physician, who discovered no physical evidence of additional injury. The doctor was of the opinion that Entri-kin’s heightened pain was a manifestation of the disability arising out of his earlier injury and surgery. Based on Entrikin’s reports of pain arising out of his work at Federal Express, the physician for the first time suggested certain weight restrictions on Entrikin’s lifting. However, the physician reiterated that these restrictions were attributable to the disabled condition that existed before Entrikin began his employment at Federal Express.
¶ 6. After leaving Federal Express, En-trikin became self-employed, engaging in various home repair or home improvement projects for customers. He reported doing such jobs as house-painting, building a deck, and other similar projects that utilized his previous experience in home construction. He reported that he had to hire assistants to do any heavy lifting associated with these projects and said that the flexibility of being self-employed was helpful in avoiding over-exertion and the resulting pain he experienced while working in regular employment. Income figures from his self-employment activities indicated a substantially decreased income from his salary at Goodwood Lumber.
¶ 7. Based on this evidence, the Commission concluded that Entrikin suffered a disabling injury while employed at Good-wood Lumber that permanently impaired his ability to earn wages through employment. Specifically, the Commission concluded that Entrikin suffered a fifty percent loss of wage-earning ability due to the permanent complications of his spinal injury.
¶ 8. Dissatisfied with the conclusions of the Commission, Goodwood Lumber and its carrier appealed to the DeSoto County Circuit Court. That court affirmed the Commission, which prompted this appeal in which Goodwood Lumber and the carrier present three issues for consideration.
II.
The First Issue: Is the Correct Employer Before the Court?
¶ 9. Goodwood Lumber argues that the Commission erred as a matter of law when it assessed it with the obligation to compensate Entrikin for his disabling injuries. According to Goodwood, the proof is overwhelming that Entrikin’s disability actually arose out of a subsequent injury, or aggravation of his prior condition, that occurred during his employment at Federal Express. Goodwood Lumber, therefore, urges the application of a rule that appears in Vardaman S. Dunn’s treatise on Mississippi workers’ compensation law and in the respected treatment of compensation law on a national basis by Arthur S. Larson. The rule announced by Dunn is as follows:
[W]hen the original injury is aggravated or lighted up by the activity associated with the later employment to produce disability, the general rule, in the absence of statute, is that the last employer or carrier is exclusively liable.
Vardaman S. Dunn, Mississippi WoRkmen’s Compensation § 188 (3d ed.1990). Essentially the same rule is announced in Larson’s work at § 95.20. 9 Arthur Larson et al., Larson’s Workers’ Compensation Law § 95.20 (Matthew Bender ed.1998). Though the Mississippi Supreme Court has never unequivocally adopted the rule in Mississippi, this Court has recently applied it after concluding that it was “consistent with existing interpretations of Mississippi law.” United Methodist Senior Services v. Ice, 749 So.2d 1227 (¶ 13)(Miss.Ct.App.1999).
¶ 10. However, conceding the applicability of the rule in Mississippi does not, as Entrikin urges, compel a finding that the Commission decided the case on an incorrect legal principle. Before the rule can be invoked, there must be substantial evi *473 dence establishing that a subsequent injury or subsequent aggravation of a previously-existing injury has occurred during the course of the claimant’s subsequent work at a new employer. It is on this point that Entrikin’s argument fails.
¶ 11. We reach this conclusion despite conceding that there was evidence from the claimant that he reinjured himself while lifting parcel containers at Federal Express. This testimony, standing alone, might seem to invoke the “intervening cause” rule and implicate Federal Express as the proper employer to be subjected to a claim for compensation. However, the Commission is charged with determining where the preponderance of the evidence regarding compensability lies and must make that decision from the entire body of credible evidence presented to it. Hollingsworth v. IC Isaacs & Co., 725 So.2d 251 (¶ 11)(Miss.Ct.App.1998). Despite Entrikin’s statements, there was substantial medical evidence from the only treating physician to give evidence at the hearing that Entrikin’s difficulties experienced while working at Federal Express were merely a manifestation of the problems associated with his earlier injury and the permanent impairment associated with his incomplete recovery from that injury. Entrikin’s treating physician testified that he discovered no evidence of additional injury to the site of his previous surgery or to any other area of his body when Entrikin returned after his stint at Federal Express. The physician was of the opinion that the symptoms reported by Entrikin were merely those that might reasonably be expected of one suffering under his limitations who exerted himself in the manner required by his new work.
¶ 12. While it is true that the rule speaks alternatively of a new injury and of an existing injury being aggravated by subsequent employment, we do not find the second concept to include simply an increase in symptoms of pain caused by a particular exertion when those symptoms are not unexpected based on the person’s previously-existing medical condition. The fact that Entrikin was willing to undertake the effort to return to gainful employment is commendable. Evidence that he experienced increased pain from the physical exertion associated with that work to the extent that he was unable to continue does not, of itself, prove that he suffered a subsequent injury at this job or that he aggravated a previous injury as that term is meant in the context of the rule concerning intervening causes.
III.
The Second Issue: The Degree of Entrikin’s Disability
¶ 13. Goodwood Lumber argues that Entrikin failed to prove by a preponderance of the evidence the degree of his permanent disability such that there is not substantial evidence in the record to support the Commission’s determination of a fifty percent decrease in wage-earning ability. Goodwood specifically argues that, in order to assess the degree of a partial permanent disability, it is incumbent upon the claimant to offer evidence concerning his post-recovery efforts to re-enter the work force, whether in the same or similar work or in other fields for which he might be suited by education and experience. See, e.g., Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601 (Miss.1980). The employer then urges that Entrikin’s evidence on this issue was deficient.
¶ 14. Goodwood points out that Entrikin remained unemployed for a period after his injury, confining himself to helping out his father with odd jobs in exchange for lodging and the use of a vehicle without any evidence that his injuries were the underlying cause of this period of relative inactivity. What Goodwood fails to take into account in its argument is the uncon-troverted evidence that Entrikin attempted, after recuperating from his surgery, to return to his previous job but testified that he was unable to perform all of the essen *474 tial elements of the job — particularly, the lifting and unloading associated with delivering building materials to job sites. Goodwood also fails to address the fact that Entrikin sought to return to the work force in a new job with Federal Express but, after four months, found himself unable to continue because the efforts associated with that work exacerbated the pain that was an outgrowth of his earlier injury.
¶ 15. Additionally, we are pointed to no authority nor has our research produced any authority that electing to pursue self-employment in a field in which the claimant is suited by prior experience may not be considered as a bona fide effort to return to the work force. Entrikin testified that this form of work was well-suited to his condition since it permitted him to move at his own pace and thereby manage the pain associated with his disabling neck injury. He also produced credible evidence of his ability to produce income for himself through these pursuits. It is not disputed that he was earning substantially less in this new endeavor than he was able to earn as a salaried employee of Good-wood. The Commission was apparently satisfied that Entrikin’s efforts at earning a livelihood, though not blessed with great monetary success, represented a good faith effort by him to pursue an income-producing activity for which he was suited by experience and which he was able to pursue, taking into account the limiting factor of his disabling injury. Such determinations, if supported by substantial evidence, are beyond the reach of this Court to interpose our own view of Entrikin’s level of effort to remain gainfully employed. Hollingsworth, 725 So.2d at 254-55 (¶ 11). We find that there was substantial evidence in the record from which the Commission could legitimately conclude that Entrikin’s wage-earning abilities had been diminished by fifty percent or more, which finding makes it inappropriate for this Court to disturb the Commission’s determination of a fifty percent loss of wage-earning capacity.
IV.
The Third Issue: Entrikin’s Earnings During His Recovery Period
¶ 16. The proof is uncontradicted that Entrikin worked on light duty for Goodwood, primarily by manning a sales counter, during the course of his recovery from his injury and that he was paid wages for that work. It is also uncontradicted that these wages were earned during the period that the Commission found Entrikin to be temporarily totally disabled and ordered that he be paid disability benefits accordingly. Entrikin has confessed that, to the extent the Commission’s order relating to temporary total disability payments did not contemplate credit for these earnings, it was in error. The trial court affirmed the Commission, treating the matter of Entrikin’s post-injury earnings as a matter of clarification. We consider the Commission’s order, insofar as it is silent regarding any credit for post-injury wages earned during Entrikin’s recovery period, to be error rather than a matter needing clarification. Since we do not have the necessary data to compute the proper credits due against Goodwood Lumber’s liability for temporary total disability payments, we find it necessary to reverse this portion of the Commission’s order and remand the matter directly to the Commission for the calculation of that credit and an appropriate modification of the Commission’s present order, which we otherwise affirm as entered.
¶ 17. THE JUDGMENT OF THE CIRCUIT COURT OF DESOTO COUNTY IS AFFIRMED AS TO THE DETERMINATION OF THE EXISTENCE AND EXTENT OF THE APPELLEE’S WORK-RELATED DISABILITY AND THE BENEFITS TO WHICH HE IS ENTITLED AS A RESULT THEREOF. THE JUDGMENT IS REVERSED TO THE EXTENT THAT THE CIRCUIT COURT DID NOT AFFIRMATIVELY ORDER PROPER CREDIT FOR WAGES EARNED BY THE APPEL- *475 LEE DURING THE PERIOD OF HIS TEMPORARY TOTAL DISABILITY AS THAT PERIOD WAS DEFINED BY THE ORDER OF THE COMMISSION. THIS MATTER IS REMANDED DIRECTLY TO THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION FOR A DETERMINATION OF THE PROPER CREDIT DUE AGAINST THE APPELLEE’S AWARD OF TEMPORARY TOTAL DISABILITY COMPENSATION FOR WAGES EARNED BY HIM DURING THE PERIOD OF HIS TEMPORARY TOTAL DISABILITY AND THE ALLOWANCE OF THAT CREDIT AGAINST THOSE AMOUNTS OTHERWISE DUE UNDER THE ORDER OF THE COMMISSION. THE COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.
KING AND SOUTHWICK, P.JJ., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.