BARNES, J.,
for the Court:
¶ 1. Susan Sammie Smith filed a claim for benefits with the Mississippi Workers’ Compensation Commission (Commission) for injuries she claims she suffered while working for Sysco Food Services (Sysco). Her request for benefits was denied by the administrative judge and, subsequently, by the full Commission, which found that Smith failed to prove she sustained cumulative trauma to her hands and neck “manifesting in mid-September 2001” as a result of work-related injuries. She appealed the decision to the Hinds County Circuit Court, which upheld the denial of benefits. On appeal, we find that the Commission’s decision was supported by substantial evidence and affirm.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Smith began working for Sysco in 1994. Initially, she was employed as a *116 selector and pulled orders to be placed on trucks for delivery. Later, she obtained a position unloading trucks in Sysco’s shipping and receiving department. This entailed the use of a hand or electric jack to move pallets of food. Subsequently, Smith worked in the damage area, pulling damaged goods and restocking items. Lastly, Smith worked in the customer service department, pulling orders for customers. All of these positions required Smith to lift and move heavy boxes.
¶ 3. Smith suffered a workplace injury in 1994 when some cases of food hit her in the face.' She was treated for neck and face pain and received a cervical MRI, which was “within normal limits,” although there was some mild posterior spurring at C6-C7. Smith received physical therapy for her cervical strain as a result. She subsequently had another accident when some boxes fell and hit her; although she reported this accident to her supervisor, she did not require medical treatment. In 1996, Smith was treated for arm, face, and head injuries from a chemical spill. On August 21, 1998, Smith was treated for a work-related injury to her left ankle and foot when she slipped on ice in the freezer. Smith’s various injuries were covered by workers’ compensation insurance. Smith claims she also suffered other minor injuries at work, none of which she reported to her supervisor.
¶ 4. On May 18, 1999, Dr. Gary Nelson, Smith’s family practitioner, diagnosed her with acute lumbar strain, a result of a work injury and referred her to Dr. Michael Vise, a neurosurgeon. Smith complained of numbness in her legs. Dr. Vise diagnosed Smith with chronic lumbosacral strain.
¶ 5. In mid-September 2001, Smith was driving to work when she blacked out. Smith said she contacted Sysco to inform the company of her illness and to notify the company of her absence. Smith sought treatment from Dr. Nelson on September 19, 2001, for symptoms of dizziness and nausea. He diagnosed Smith with an upper respiratory infection and sinusitis. A few days later, Smith contacted the clinic, complaining that she was still dizzy, faint, and nauseated. Dr. Nelson concluded that the dizziness likely was caused by Smith’s sinusitis medicine. He provided Smith with a work absence excuse, stating she could return to work on October 8, 2001. As Smith was also experiencing abdominal pain, Dr. Nelson referred her to Dr. James Lewis, an obstetrics and gynecology doctor (OB/GYN), who provided her with a work excuse from October 9 through October 23, 2001. Smith never returned to work at Sysco.
¶ 6. Sysco terminated Smith’s employment on October 26, 2001, for violation of its attendance policy, as she failed to return to work after her doctor’s excuse had expired. In a letter dated November 5, 2001, Sysco notified Smith that due to her unexcused absences totaling eight consecutive days, she was considered to have abandoned her job.[1] The letter also informed Smith that she could elect to continue insurance coverage. Denise Jones, Sysco’s human resources director since 1998, later testified that Smith was terminated because Sysco did not hear from Smith for two days (October 24-25, 2001) after her work excuse had expired. Jones said she was never in contact with Smith regarding her absences and refuted Smith’s allegation that when Smith requested medical leave, she told Smith it *117 would be denied. Jones stated that she sent Smith some Family Medical Leave Act (FMLA)[2] forms, but Smith never returned them.[3]
¶ 7. Deciding not to seek further treatment from Dr. Lewis, Smith sought treatment from Dr. Ted Roth, an OB/GYN at the University of Mississippi Medical Pavilion. During her initial visit to Dr. Roth on October 8, 2001, he noted in her records that she worked in a warehouse and had “some repetitive motion injury to her hands.” He also stated that she had “[i]n-termittent numbness and tingling of her hands secondary to repetitive motion injury.” However, he did not treat her for this condition; these observations were merely part of her medical history. On her follow-up visit on November 8, 2001, Dr. Roth only noted Smith had reflux and severe abdominal pain. No mention was made of her hands.
¶ 8. In May 2002, Smith sought treatment at Jackson-Hinds Comprehensive' Health Center for numbness in her hands and feet and chest pain. A medical report, dated June 21, 2002, stated that Smith had paresthesia in her hands and feet. A few days later, she was treated for a sore throat and temple pressure. On June 21, 2002, Smith reported neck and lower back pain, along with numbness in the hands and feet, and was diagnosed with degenerative disc disease in the cervical spine. On July 1, 2002, Smith had a cervical MRI that showed disc degeneration at the C5-C6 and C6-C7 levels.
¶ 9. On August 27, 2002, Smith sought medical treatment from Dr. Adam Lewis, a neurosurgeon with the Jackson Neurosurgery Clinic, for neck and lower back pain and numbness in her hands and feet.[4] During a follow-up visit on October 5, 2002, she “reported there was no improvement in the carpal tunnel syndrome.” Dr. Lewis performed an endoscopic right carpal ligament release on Smith on October 9, 2002, to relieve the pain. When she returned on December 12, 2002, Smith reported that her right-hand numbness had resolved. On January 15, 2003, Dr. Lewis operated on Smith to treat her cervical spondylosis, and he also performed an endoscopic left carpal ligament resection. On June 20, 2003, Dr. Jacob Mathis, also with the Jackson Neurosurgery Clinic, reported that the fusion was solid, and Smith should only return to the clinic as needed.
¶ 10. Smith returned to the Jackson Neurosurgery Clinic in February 2004, complaining that she was dropping things and being awakened by tingling and numbness in her hands. Wrist splints and physical therapy were recommended; however, when Smith returned in March 2004, it was determined that she did not have a “neurosurgical treatable condition,” and she was referred to a rheumatologist. It was reported that Smith had reached maximum medical improvement on March 10, 2004, with a 25% permanent partial disability.
¶ 11. In the meantime, Smith filed a petition to controvert with the Commission on November 8, 2002, claiming that she was suffering from work-related injuries to her hands, neck, and lower back.[5] Smith claimed that she had experienced tingling *118 and numbness in her hands since 1994. A hearing was held on November 3, 2008, for the purpose of determining whether Smith sustained a compensable injury during her employment at Sysco. On January 7, 2009, the administrative judge denied Smith benefits, concluding that she “ha[d] not proven she sustained cumulative trauma, work-related injuries to her hands and neck manifesting in mid-September 2001[.]” The full Commission affirmed the administrative judge’s order on June 19, 2009.
¶ 12. Smith appealed the decision to the circuit court, which upheld the denial of benefits. Finding that the Commission’s decision to deny benefits was supported by substantial evidence, we affirm.
STANDARD OF REVIEW
 ¶ 13. “The standard of review by which an appellate court resolves a workers’ compensation case is that of substantial evidence; however, where the issue is one of law and not of fact, the standard of review is de novo.” Hugh Dancy Co., Inc. v. Mooneyham, 68 So.3d 76, 79 (¶ 6) (Miss.Ct.App.2011) (quoting Shelby v. Peavey Elecs. Corp., 724 So.2d 504, 506 (¶ 8) (Miss.Ct.App.1998)). The Commission is “the ultimate fact finder in addressing conflicts in medical testimony and opinion.” Smith v. Tronox LLC, 76 So.3d 774, 780 (¶ 23) (Miss.Ct.App.2011) (quoting Raytheon Aerospace Support Servs. v. Miller, 861 So.2d 330, 336 (¶ 13) (Miss.2003)). “Even if this Court would not have reached the same decision as the Commission, we must affirm when the Commission’s findings are supported by substantial evidence and are neither arbitrary nor capricious.” Id. (citing Raytheon, 861 So.2d at 338 (¶ 25)). We will only reverse the Commission’s decision “for an error of law or an unsupported finding of fact.” Mixon v. Greywolf Drilling Co., LP, 62 So.3d 414, 417 (¶ 10) (Miss.Ct.App.2010) (quoting Weatherspoon v. Croft Metals, Inc., 853 So.2d 776, 778 (¶ 6) (Miss.2003)).
DISCUSSION AND ANALYSIS
¶ 14. The only issue on appeal is whether the Commission erred in denying workers’ compensation benefits to Smith concerning her alleged work-related injuries to her hands, neck, and lower back. Smith contends that she experienced a “gradual and progressive onset of disability caused by the cumulative and repetitive impact activities of her employment” with Sysco.
¶ 15. To support her assertion, she notes testimony by Dr. Lewis, the neurosurgeon who operated on her hands. Dr. Lewis was first deposed on April 13, 2005. Dr. Lewis stated that Smith came to him for treatment, complaining of “neck and low back pain” and “numbness in the hands and feet.” Dr. Lewis noted that there was “no precipitating event.” He further stated that the fact that Smith did not see a doctor for carpal tunnel syndrome while working at Sysco, but rather had pain afterwards paired with a “rheu-matologic disease[,] may tie it into something that’s not work related.” At that time, Dr. Lewis admitted that he was not familiar with the type of work Smith performed in 2001, stating he thought she was a secretary.
¶ 16. At a second deposition on December 16, 2006, Dr. Lewis reiterated that Smith had signs “indicative of carpal tunnel syndrome.” He also reviewed Dr. Roth’s records, testifying that “the numbness and tingling in her hands is related to the carpal tunnel syndrome, and repetitive motion is a classic presentation for carpal tunnel syndrome.” Unlike his earlier testimony, however, he claimed that these symptoms were “temporally related to her *119 difficulties which began in September of '01.” He concluded: “The answer is that the patient has bilateral carpal-or had bilateral carpal tunnel due to repetitive hand motion injury and also had neck and left radicular arm pain due to cervical spondy-losis and her work-related injury, again, using the objects over 100 pounds.”
II17. Dr. Mathis also stated that it was his “impression that the bilateral carpal tunnel syndromes, which required surgery for treatment, relate directly to the repetitive actions which [Smith] performed during her employment with Sysco Food Service.” He said that her pre-existing cervical spondylosis “was aggravated during the course of employment.”
¶ 18. Yet, when asked whether Smith reported any work injury upon her initial visit, Dr. Lewis admitted that she had not done so. He also acknowledged that carpal tunnel syndrome can be “related to thyroid disease, pregnancy, vitamin A deficiency, and a variety of other causes.” Further, Dr. Lewis admitted that there was no medical evidence that Smith had issues with her hands in the year prior to her leaving work.
Q. Do you have any medical evidence whatsoever that she had any type of complaints, pain, or problems with her hands since the year 2000, which would go back actually one year and nine months before this allegedly occurred?
A. No.
Q. Okay. So you don’t have any from 2000 until September the 19th of 2001 when this allegedly occurred, and you don’t have any from September 19th until there is a secondary notation in Dr. Roth’s report dated October 18, 2001. Correct?
A. Yes.
In a May 16, 2007 deposition, Dr. Lewis was asked about the relationship between Smith’s cervical spondylosis and her employment:
Q. Do you have an opinion based upon a reasonable degree of medical probability as to whether the degenerative condition for which you ultimately performed surgery was causally related to her employment?
A. Again, if we look at that issue, what we would have to look at is was there anything in the medical record that suggests neck and arm pain causally related to her work. I don’t recall seeing anything like that.
Dr. Lewis said that Smith complained to him of “stabbing” neck and lower back pain that began in September 2001; however, he acknowledged that Smith’s complaints of neck pain are not supported by Dr. Nelson’s medical records. Dr. Lewis later asserted at the same deposition: ‘You know, the more I see that, I think you may be able to put the neck and back pain to the work history because she even missed work because of it.... So I think, you know, I have to revise my testimony earlier and state that the neck pain and the spondylosis was related to work.” The missed work to which Dr. Lewis is referring, however, occurred prior to 2000. He admitted that there was nothing in Smith’s medical history regarding lower back or neck pain after 1999.
¶ 19. Dr. Alan Freeland, “an expert in orthopaedic subspecialty in hand surgery,” reviewed Smith’s medical records and the deposition transcripts and concluded in his report that “within a reasonable medical probability[,] Ms. Smith’s bilateral carpal tunnel syndrome are not work related and do not merit controversion to Workers’ Compensation injuries.” He also refuted Dr. Lewis’s findings:
*120 Dr. Lewises] first reason for declaring the patient’s problems as “occupationally-related” is her job as a manual worker. The relationship of repetitive manual work to injuries in the work place is quite controversial. Broad sweeping conclusions cannot be reached on either side of the argument.... Repetitive forces may or may not be a risk factor for carpal tunnel syndrome. It is my view that each case must be evaluated individually and on the basis of its independent merit.
Dr. Freeland later testified that symptoms such as the numbness and swelling experienced by Smith are “usually indicative of a systemic problem.” Dr. Freeland noted that although Smith claims her tingling and numbness in her hands began in 1994, she “never related these complaints to her work nor reported them as work related.” He stated: “I could not find any evidence that substantiated that this problem occurred on the job.”
¶ 20. Smith claims that she stopped working at Sysco “because her pain had worsened, her hands were numb and purple-colored when not at work[,] and she blacked out while driving to work.” However, except for the dizziness, none of Smith’s previous injuries at work, for which she sought medical care, were related to any issues with the tingling and numbness of her hands. Dr. Nelson, a family practitioner, had been treating Smith since May 16, 1996, for various illnesses, none related to her hand or cervical spondylosis. Smith was treated by Dr. Nelson in September 2001 for sinusitis. There is no mention of any issues with Smith’s hands, feet, or neck. During Dr. Nelson’s deposition on March 30, 2007, he testified that he saw Smith frequently during the end of September, but all of her medical issues concerned her sinusitis.
¶ 21. Furthermore, Smith admitted that she did not seek medical treatment for almost two years prior to her appointment with Dr. Nelson on September 19, 2001. Smith acknowledged this during her testimony:
Q. You testified earlier that your problems were severe for the last three years prior to you stopping work, however, you did not seek any type of medical treatment during the year of 2001 before you went to Dr. Nelson on September the 19th of 2001. True?
A. True.
Q. You didn’t seek any type of medical treatment from Dr. Nelson or anybody else during the year 2000, correct?
[[Image here]]
Q. Do you have medical reports that support your allegations?
A. No.
¶ 22. Thus, our review of the record supports the administrative judge’s finding that Smith “has not met her burden of proof that she sustained cumulative trauma to her bilateral upper extremities and neck which manifested in mid September 2001.” Accordingly, we affirm the Commission’s denial of benefits.
¶ 23. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING and GRIFFIS, P.JJ., ISHEE, ROBERTS, CARLTON, MAXWELL, RUSSELL and FAIR, JJ., CONCUR.

. Sysco’s employee handbook states: “Failure to report an absence for two consecutive days is considered a voluntary resignation."

. 29 U.S.C.A. § 2612 (1993).

. There is an FMLA form in the Court's record, but it only covers the period from September 17, 2001 to October 8, 2001.

. Although Smith sought treatment from two Dr. Lewises, any further reference to Dr. Lewis will refer to Dr. Adam Lewis, since Dr. James Lewis did not testify or make a statement regarding this case.

.Smith does receive social security disability benefits.