ISHEE, J.,
for the Court:
¶ 1. In July 2011, William Walker was employed with Williams Transport LLC as a truck driver. While working, Walker exited his truck, fell, and was injured. He received medical attention at a nearby hospital shortly after the accident where a urinalysis revealed cocaine in his system. Walker filed a petition to controvert with the Mississippi Workers’ Compensation Commission against Williams Transport. In July 2012, an administrative judge (AJ) found Walker’s intoxication to be the proximate cause of the injury and dismissed the claim. The Commission affirmed the AJ’s findings and Walker now appeals. Finding no error, we affirm.
STATEMENT OF FACTS
¶ 2. While employed with Williams Transport, Walker was working in Texas driving an eighteen-wheeler truck. On July 18, 2012, Walker drove the eighteen-wheeler to a truck scale to be weighed. When exiting the truck, he claims to have slipped and fallen several feet to the ground below. He testified to having back and rib pain from the fall.
¶ 3. After reporting his injuries to his supervisor, Terry Bass, he was instructed to seek medical attention at a nearby hospital in Shreveport, Louisiana. During his time at the hospital, he submitted to a urinalysis. Shortly thereafter, he was informed that his urinalysis tested positive for cocaine.
¶ 4. On August 19, 2011, Walker filed a petition to controvert against Williams Transport, claiming work-related injuries stemming from his fall. In response, Williams Transport raised the affirmative defense of intoxication due to Walker’s positive drug test at the hospital. In July 2012, the AJ held a compensability hearing. Several witnesses testified, including Walker, Bass, and Dr. William George, an expert in toxicology and pharmacology.
¶ 5. Walker explained that during the time in question, his job with Williams *119 Transport had been to drive an eighteen-wheeler between a sand yard in Marshall, Texas, and a drilling location about an hour and a half away in Mansfield, Louisiana. The truck would be loaded with fracking sand at the sand yard and then unloaded at the drilling location during each trip. Walker testified that on the day before the incident, he drove his regular route until approximately 9 p.m., when he arrived at the drilling location to unload the fracking sand. There, he was met with delays from an accident involving another truck. He stated that he was told he could not unload until 3 a.m. Walker said he slept in the cab of his eighteen-wheeler until 3 a.m., unloaded the sand, and then slept another three to four hours in the cab. Walker testified that he then drove the truck back to the sand yard on the morning of the incident and arrived at approximately 9 a.m. He stated that he made a round trip and arrived back at the sand yard to be refilled again at 3 p.m. The record reflects that his return trip to the sand yard took half an hour longer than usual. On his way out of the sand yard, he stated that he pulled the truck onto a truck scale, opened his door to get out, and fell to the ground.
¶ 6. When questioned about his usage of cocaine, Walker admitted to having been addicted to cocaine in the past, but stated that he had not consistently used cocaine in some time. However, he admitted that he had relapsed about two weeks prior to the accident and had used crack cocaine at a party. Walker told the AJ that he could have taken anywhere between one and ten inhalations of crack cocaine at the party. However, Walker told the AJ he had not used cocaine after the party.
¶ 7. Bass testified that on the day of the incident, he signed Walker’s trip ticket when he left the drilling location for the sand yard the last time before the accident. Bass said that almost immediately after Walker left the drilling location, he telephoned him and asked for directions back to the sand yard. Bass testified that he found this to be strange since Walker had been driving the same route multiple times a day for almost two weeks. Nonetheless, Bass gave him directions and sent him on his way. A few hours later, Bass was informed of Walker’s injuries. Walker and another individual met Bass at a nearby truck stop. Bass stated that Walker appeared “out of it.” Bass accompanied Walker to the nearby hospital, where he observed Walker fall asleep in the emergency waiting room numerous times. Bass testified that Walker seemed to be “a little disoriented.”
¶ 8. Dr. George reviewed Walker’s medical records. He testified that the positive drug test indicated that Walker had used cocaine between two and three days prior to the accident. Dr. George further explained that cocaine has both immediate and lingering effects on the body. Specifically, he stated that delayed effects can include apprehension, depression, fatigue, and impaired concentration for some time after use. While Dr. George admittedly could not presume definitive impairment solely from the urine test, he said that “[the] cocaine has to be considered to be more likely than not the most significant factor in causing the accident.”
¶ 9. Ultimately, the AJ determined that Walker’s use of cocaine was the proximate cause of the accident. Hence, the AJ dismissed Walker’s claim against Williams Transport. The Commission later affirmed the AJ’s findings. Walker now appeals.
DISCUSSION
¶ 10. In workers’ compensation cases, we have held that “[s]o long as there *120 is substantial evidence in the record to support the Commission’s findings, this Court is obligated to affirm the Commission's judgment].” Hollingsworth v. I.C. Isaacs and Co., 725 So.2d 251, 254-55 (¶ 11) (Miss.Ct.App.1998). The issue at hand is whether there is substantial evidence in the record to support a finding that Walker was intoxicated at the time of the incident and that the intoxication was a proximate cause of Walker’s injuries. We find that such evidence exists.
¶ 11. First, Walker admitted to having used crack cocaine at a party on July 5, thirteen days before the incident. Moreover, he admitted that he could have exposed himself to anywhere between one and ten inhalations of crack cocaine during the party. While he states that he did not use cocaine between the time of the party and the time of the incident, the test results at the hospital clearly indicate that cocaine was in his system at the time he fell.
¶ 12. Additionally, we find Dr. George’s testimony to be of particular significance. As an expert in pharmacology and toxicology, he testified that cocaine could affect a user both instantaneously and well after usage. Again, he found that, based on the urinalysis at the hospital, Walker must have used cocaine within two to three days prior to the accident. Dr. George testified that the residual effects of Walker’s crack-cocaine usage prior to the incident likely caused Walker’s fatigue and disorientation, thus contributing to Walker’s fall. This is supported by Bass’s observations of Walker’s disorientation and fatigue during Walker’s phone call to Bass for directions and during Bass’s time with Walker at the hospital after the accident.
¶ 13. Given the evidence before us, we cannot find error in the Commission’s determination that Walker’s intoxication proximately caused his injuries. Accordingly, we affirm the Commission’s judgment. Walker’s issues on appeal are without merit.
¶ 14. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.