ROBERTS, J.,
for the Court:
¶ 1. Timothy Mosby filed a claim for benefits with the Mississippi Workers’ Compensation Commission (“Commission”) for injuries he suffered while working for Tara Cares LLC. The Commission denied Mosby’s request for permanent partial disability benefits. Mosby appeals and argues that the Commission improperly weighed the evidence. We find that the Commission’s decision was supported by substantial evidence. Accordingly, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On June 18, 2008, Mosby injured his lower back while working at Cleveland Nursing and Rehab, a facility supported by Tara Cares. Mosby was thirty-seven years old at that time. He was initially treated by Dr. Charles Brock at Cleveland Medical Clinic. Dr. Brock diagnosed Mos-by with back strain. According to Dr. Brock, an MRI of Mosby’s back indicated that he had “some disc bulges,” but they were “chronic findings with nothing exactly acute found.” Mosby requested a second opinion, so Dr. Brock referred him to Dr. Jimmy Miller, a neurosurgeon.
¶ 3. Dr. Miller evaluated Mosby on September 3, 2008. After evaluating Mos-by and reviewing his MRI, Dr. Miller’s impression was that Mosby had “[m]ild lumbar spondylosis.”[1] Dr. Miller referred Mosby to anesthesiologist and pain-management physician, Dr. Ahmed Aziz.[2]
¶ 4. Meanwhile, Mosby continued to attend follow-up appointments with Dr. Brock. On September 29, 2008, Dr. Brock released Mosby to return to work the next day. Dr. Brock specified that Mosby should receive “modified duty.” A note from Dr. Brock provides the following guidelines “i.e., folding clothes, no heavy lifting, [and] no driving long distances.” When Mosby returned to work, he was offered light duties that consisted of folding clothes and wrapping silverware. He was assured that no lifting, pulling, walking, resident care, or driving would be required. Mosby’s employer also gave Mosby the option to use a chair or stool.
*1058 Mosby signed a form acknowledging that he was offered work within his restrictions, but he chose to resign. He did not return to work. In October 2008, Mosby filed a petition to controvert with the Commission.
¶ 5. Mosby continued to attend appointments with Dr. Aziz. Dr. Aziz primarily treated Mosby with pain medications. Dr. Aziz’s medical records indicate that Mosby suffered from degenerative disc disease.
¶ 6. During December 2009, Mosby began to attend appointments with Dr. Nathan Brown. Dr. Brown’s records indicate that Mosby began seeing him because he wanted to transfer from Dr. Brock’s care. The record contains Dr. Brown’s handwritten notations, which are difficult to read. However, Dr. Brown’s records contain references to Mosby’s statements that he was suffering from pain due to an injury at his former job. Dr. Brown also stated that Mosby suffered from “lumbar disc disease” and degenerative joint disease.
¶ 7. At the request of Mosby’s former attorney, neurosurgeon Dr. Craig Clark evaluated Mosby. Dr. Clark stated that there were no clinical findings related to Mosby’s lumbar injury. Dr. Clark also found that Mosby needed no further treatment, and recommended that Mosby undergo a functional-capacity exam (FCE) to address potential restrictions. Dr. Clark’s records state that he “cannot tell [Mosby] that he is not hurting, but his exam is nonfocal, and shows nothing that will require surgery.” Dr. Clark found that Mosby had reached maximum medical improvement, and assigned Mosby a whole-body-impairment rating of zero percent.
¶ 8. Chad Barker of Tupelo Physical Therapy performed the FCE on Mosby on December 10, 2010. According to Barker, Mosby said that he had been told “that if [he] lift[s] anything or do[es] anything like play sports, then [he is] within one inch of being paralyzed.” When Barker further questioned the validity of that statement, Mosby said, “Well I may have added that little extra bit. You know it is bad. I may not be paralyzed, but it is really bad.” Barker reported that Mosby became increasingly agitated during the FCE. Ultimately, Barker had to terminate the FCE. Barker later reported that Mosby had “self-limited” on all tasks, and he had a substantial amount of “non-organic findings.” Barker released Mosby to return to work with no restrictions or limitations.
¶ 9. On October 7, 2011, Mosby underwent a Commission-ordered independent medical evaluation (IME) with Dr. Jeffrey Summers. During the IME, Mosby told Dr. Summers that he had osteoarthritis. Dr. Summers stated that osteoarthritis “would be consistent with his clinical presentation.” Following the IME, Dr. Sum■mers opined that nothing was preventing Mosby from returning to essentially normal activities. Dr. Summers further opined that Mosby’s “problems do not appear to be posttraumatic, but rather more related to a diffuse joint pain.” According to Dr. Summers, Mosby’s complaints “would not appear to be related to a specific work injury.”
¶ 10. After Dr. Summers’s IME, Mosby sought an evaluation from Dr. Rommel Childress. Dr. Childress stated that he reviewed Mosby’s medical records, but he did not specifically address any of the opinions of the physicians who had previously evaluated Mosby. According to Dr. Childress, Mosby’s injury at work “has tended to aggravate” Mosby’s arthritis and spinal stenosis. Dr. Childress assigned Mosby a fourteen percent impairment rating “to the body as a whole.”
¶ 11. After a hearing, the administrative judge (AJ) found that Mosby sustained a compensable work-related injury, *1059 and awarded Mosby approximately $260 in temporary total disability benefits. The AJ also awarded Mosby permanent partial disability benefits of $25 per week, for a total of 450 weeks. The AJ further ordered Tara Cares to pay for Mosby’s pain-management treatment with Dr. Aziz and physical therapy.
¶ 12. Mosby appealed to the Commission, and Tara Cares cross-appealed. The Commission affirmed the AJ’s decision regarding temporary total disability benefits. But the Commission reversed the AJ’s decision to award Mosby permanent partial disability benefits of $25 per week for 450 weeks. The Commission further held that Tara Cares was not obligated to pay for any ongoing medical treatments for Mos-by. Mosby appeals.
STANDARD OF REVIEW
¶ 13. “In reviewing appeals from rulings of the ... Commission, this Court must resolve whether a quantum of credible evidence supports the Commission’s decision.” Union Camp Corp. v. Hall, 955 So.2d 363, 368 (¶ 23) (Miss.Ct. App.2007). “We may not resolve conflicts in the evidence. Rather, we presume that the trier of fact, the Commission, resolved all conflicts in evidence.” Id. (internal citation omitted). We employ a highly deferential standard of review. Id. “Essentially, we will overturn the Commission if its decision was arbitrary and capricious.” Id. ‘We will also overturn the Commission if its decision was based on an error of law or an unsupported finding of fact.” Id.
ANALYSIS
¶ 14. Mosby argues that the Commission applied undue weight to the opinions of Dr. Brock, Dr. Miller, Dr. Clark, Dr. Summers, and Barker. According to Mosby, the opinions of Dr. Aziz, Dr. Brown, and Dr. Childress should outweigh the opinions of the physicians who found that he was not suffering from an ongoing work-related injury. Essentially, Mosby invites us to reweigh the evidence.
¶ 15. “As with any fact-finder, the Commission is entitled to rely upon the evidence and reasonable inferences.” Smith v. Tronox LLC, 76 So.3d 774, 778 (¶ 14) (Miss.Ct.App.2011). If the Commission’s findings of fact “are supported by substantial evidence,” this Court will affirm on appeal. Id. “In other words, this Court will reverse an order of the ... Commission only where such order is clearly erroneous and contrary to the overwhelming weight of the evidence.” Id. “Unless common knowledge suffices, medical evidence must prove not only the existence of a disability but also its causal connection to the employment.” Id.
¶ 16. Dr. Aziz is an anesthesiologist and pain-management physician. During a deposition, Dr. Aziz testified that he reviewed Mosby’s MRI and found a central disc protrusion, but it was not impinging on any nerve roots. Dr. Clark, a neurosurgeon, explained that a protrusion does not cause back pain when there is no nerve compression. Dr. Aziz also indicated that the MRI depicted lateral recessed stenosis. According to Dr. Aziz, lateral recessed stenosis caused Mosby to suffer from radiculopathy. Dr. Clark testified that Mosby was not suffering from radicu-lopathy during his examination. Dr. Clark further explained that “radiculopathy shouldn’t come and go,” and “[t]here should be consistent motor and reflex findings to indicate that a certain nerve root is the problem.” Additionally, Dr. Aziz never reviewed Mosby’s MRI. Consequently, there was substantial evidence supporting the Commission’s decision to weigh Dr. Clark’s testimony more heavily than Dr. Aziz’s.
*1060 ¶ 17. Dr. Brown never testified by deposition or otherwise. Dr. Brown merely recorded Mosby’s statements that he suffered an injury at work. Dr. Brown’s handwritten records contain references to the concept that Mosby suffered from degenerative joint disease. But Dr. Brown never opined that Mosby’s degenerative joint disease was related to the injury that he sustained at work.
¶ 18. Dr. Childress did not testify. Although he concluded that Mosby’s injury at work “has tended to aggravate” Mosby’s arthritis and spinal stenosis, Dr. Childress did not specifically address any of the opinions of the physicians who had previously evaluated Mosby. It was within the Commission’s discretion to assign Dr. Chil-dress’s opinion less weight than physicians who further elaborated on Mosby’s condition.
¶ 19. Finally, Mosby contends that the testimony of his treating physicians should be superior to that of the other expert physicians. We note that Dr. Brock was also Mosby’s treating physician for some time. In any event, this Court has held
[Wjhile a treating physician’s opinion is without question of great import, the Commission is not required to abide by it or required to give it any greater weight than other physicians’ opinions. It is the sole responsibility of the Commission to determine the credibility of the witnesses before it and, when conflicts in credible evidence arise, to determine where the preponderance of the evidence lies. Regardless of whether the Commission makes the decision to rule in line with a treating physician’s opinion, we must affirm its decision so long as it is supported by substantial evidence.
Richardson v. Johnson Elec. Auto., Inc., 962 So.2d 146, 152 (¶ 16) (Miss.Ct.App. 2007). Dr. Brock, Dr. Miller, Dr. Summers, Dr. Clark, and Barker all found that Mosby had no permanent impairment or work restrictions related to his injury at work. “An appellate court may not simply reweigh the evidence and substitute its decision for that of the Commission. Indeed, this Court has a duty to defer to the Commission when its decision can be supported.” Anthony v. Town of Marion, 90 So.3d 682, 687 (¶ 14) (Miss.Ct.App.2012). Because there was substantial evidence to support the Commission’s decision, we affirm its judgment.
¶ 20. THE JUDGMENT OF THE MISSISSIPPI WORKERS’ COMPENSATION COMMISSION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. "Spondylosis is a condition in which bony abnormalities compress the spine.” Spencer v. Tyson Foods Inc., 869 So.2d 1069, 1074 (¶ 21) (Miss.Ct.App.2004).

. At times, the record refers to Dr. Aziz as Dr. Ahmed Abdel-Aziz.